CITY OF DETROIT v SALARIED PHYSICIANS PROFESSIONAL
ASSOCIATION, UAW

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE
& AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW
v CITY OF DETROIT

Docket Nos. 93358, 94307. Submitted July 1, 1987, at Detroit. Decided
December 9, 1987.

The Salaried Physicians Professional Association, which had been
created for the purpose of representing in collective bargaining
with the City of Detroit doctors employed by the City of Detroit
and its health clinics, filed a petition with the Michigan Em-
ployment Relations Commission asking that a union certifica-
tion election be conducted. The city objected to an election,
claiming that SPPA's members were independent contractors
rather than its employees and that they were only temporary
workers because they had one-year contracts. Following a
hearing, the MERC held that SPPA's members were the city's
employees entitled to the protection of the public employment
relations act and that they were not temporary. The MERC also
ordered that an election be held and ordered the city to provide
SPPA with the names and addresses of the affected employees by
June 13, 1986. The city refused to comply with these orders,
whereupon SPPA filed unfair labor practice charges against the
city alleging, inter alia, that the city planned to release the
doctors from employment on July 1, when their contracts
expired, and to subcontract the work of other SPPA members.
The UAW filed a complaint against the city in Wayne Circuit
Court seeking injunctive relief to maintain the status quo
between the parties pending resolution of the unfair labor
practice charges by the MERC. The court, Cynthia D. Stephens,
J., issued a temporary restraining order, and a hearing on the
request for a preliminary injunction was scheduled. The MERC,

REFERENCES
Am Jur 2d, Injunctions §§ 13-15.
Am Jur 2d, Labor and Labor Relations §§ 600 et seq.; 2164 et seq.
Determination of appropriate bargaining unit under sec. 9(b) of
National Labor Relations Act (29 USCS sec. 159(b))—Supreme
Court cases. 83 L Ed 2d 1148.

following the election, certified the UAW as SPPA's new collective bargaining agent. The next day, city health department officials called all the patients scheduled for appointments the following day and cancelled their appointments. They also called each doctor in SPPA represented by the UAW and fired them. The UAW sought and was granted an order to show cause why the city should not be held in contempt for discharging the doctors contrary to the terms of the TRO. Following the show cause hearing, the court ordered that the fired doctors be reinstated immediately and paid for the work missed. Two days later, following hearings, the court issued a preliminary injunction extending the prohibitions contained in the TRO pending a decision by the MERC on the unfair labor practice charges filed by SPPA. The city appealed from the MERC's decision that the members of SPPA were the city's employees and therefore entitled to have an election. The city also appealed from the circuit court's decision to grant a preliminary injunction pending the outcome of the unfair labor practice charges against the city. The appeals have been consolidated.

The Court of Appeals *held:*

1. The MERC's decision that SPPA members were employees of the city, and not independent contractors, is supported by competent, material, and substantial evidence on the record and therefore will not be disturbed.

2. The MERC's decision that the physicians were not temporary employees also is supported by competent, substantial, and material evidence and is affirmed.

3. The trial court properly granted the preliminary injunction.

Affirmed.

1. LABOR RELATIONS — EMPLOYMENT RELATIONS COMMISSION — FINDINGS OF FACT.

Findings of fact by the Michigan Employment Relations Commission must be affirmed if supported by competent, material, and substantial evidence on the record considered as a whole (MCL 423.216[d]; MSA 17.455[16][d]).

2. LABOR RELATIONS — BARGAINING UNITS.

Determining whether a group is an appropriate collective bargaining unit is a question of fact which involves the issue of whether an individual is an employee.

3. LABOR RELATIONS — EMPLOYMENT RELATIONS COMMISSION — EMPLOYEES — INDEPENDENT CONTRACTORS.

The Employment Relations Commission's test for determining

whether an individual is an employee or an independent contractor is (1) whether the employer maintains control over the manner and means of performing the work as well as the end to be achieved and (2) whether the work done by the individual can be characterized as an integral part of a common task; a contract between the parties which states that their relationship is that of an independent contractor is also a factor to be considered, although it is not determinative.

4. Injunctions — Preliminary Injunctions.

A four-factor analysis is used to determine whether a preliminary injunction should issue: (1) harm to the public interest if an injunction issues; (2) whether harm to the applicant in the absence of a stay outweighs the harm to the opposing party if a stay is granted; (3) the strength of the applicant's demonstration that the applicant is likely to prevail on the merits; and (4) demonstration that the applicant will suffer irreparable injury if a preliminary injunction is not granted.

5. Injunctions — Preliminary Injunctions.

The decision to grant a preliminary injunction is within the trial court's discretion.

6. Injunctions — Preliminary Injunctions.

The object of a preliminary injunction is to preserve the status quo, i.e., the noncontested status which preceded the pending controversy; an injunction should not be granted if the party seeking it has an adequate remedy at law or if it will give one of the parties all the relief requested prior to a hearing on the merits.

*Donald Pailen,* Corporation Counsel, *Abigail Elias,* Deputy Corporation Counsel, and *Thomas L. Walters,* Supervising Assistant Corporation Counsel, for City of Detroit.

*Campbell, O'Connor & Cain, P.C.* (by *Timothy F. Cain* and *Doyle O' Connor*), for Salaried Physicians Professional Association and the UAW.

Before: J. H. Gillis, P.J., and D. F. Walsh and J. R. Ernst,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

PER CURIAM. In case No. 93358, the City of Detroit appeals as of right from the Michigan Employment Relations Commission's decision that the physician members of the Salaried Physicians Professional Association (SPPA), affiliated with the United Automobile Workers, were the city's employees and, therefore, entitled to have an election. In case No. 94307, the city appeals as of right from the circuit court's decision to grant a preliminary injunction pending the outcome of SPPA's unfair labor practice charges against the city. We affirm the MERC's decision in case No. 93358 and the circuit court's order in case No. 94307.

Before reaching the merits of this case, a brief factual history is necessary. On July 26, 1985, SPPA filed a petition seeking a union certification election. MCL 423.212; MSA 17.455(12). The proposed bargaining unit was described as all full-time and regular part-time physicians employed by the city and providing patient services in the city's family primary care health centers. SPPA subsequently affiliated itself with the UAW.

On February 27, 1986, a hearing was held on SPPA's petition. The city objected to an election, claiming that SPPA's members were independent contractors rather than its employees and that SPPA's members were only temporary workers because they had one-year contracts. The MERC held that SPPA's members were the city's employees and that they were not temporary. Consequently, on June 6, 1986, the MERC ordered an election to be held and ordered the city to provide SPPA with the names and addresses of the affected employees by June 13, 1986.

After the city refused to comply with this order, SPPA filed unfair labor practice charges against the city, alleging, among other things, that the city planned to release the doctors from employment

on July 1, when their contracts expired, and to subcontract the work of other members. Pursuant to MCL 423.216(h); MSA 17.455(16)(h), the UAW and SPPA sought an ex parte temporary restraining order to maintain the status quo until the unfair labor practice charges were settled. On June 18, 1986, the circuit court issued the temporary restraining order.

On June 27, 1986, the election was held and the union prevailed. On June 30, the city's agent called SPPA's members and informed them that their contracts would not be renewed. The next day, the UAW and SPPA filed a motion to show cause why the city should not be held in contempt for violating the temporary restraining order. The order to show cause was issued on the same day. The trial court heard the show cause motion and the motion to issue a preliminary injunction from July 1 until July 3. On July 11, 1986, the trial court found the city in contempt for violating the temporary restraining order and ordered it to rehire and to pay SPPA's members for work days missed. In addition, the trial court granted the request for a preliminary injunction.

The MERC's findings of fact must be affirmed if supported by competent, material, and substantial evidence on the record considered as a whole. MCL 423.216(d); MSA 17.455(16)(d). Determining whether a group is an appropriate bargaining unit is a question of fact which involves the issue of whether an individual is an employee. *Michigan Educational Support Personnel Ass'n v Southfield Public Schools,* 148 Mich App 714, 716-717; 384 NW2d 768 (1985).

The city claims that SPPA's members were independent contractors and not employees. Each SPPA member signed a contract with the city which provided that he or she was an independent con-

tractor. The city kept no personnel files on SPPA's members and gave them no employee manual. The city did not deduct social security or income tax from SPPA's members' pay. SPPA's members accrued no overtime pay, sick pay, vacation pay or holiday pay. They had no retirement or pension plans. The city also claimed that it had never disciplined any of SPPA's members. All members were required to become Detroit residents. Some SPPA members "moonlighted." The city paid SPPA's members' staff dues, medical malpractice insurance premiums, and fees for attending a continuing education course once each year. The city controlled members' work assignments. Members were required to punch in and out and to work certain hours. Members could not refuse to see patients, but had to see the patients scheduled by the clerical staff. The city provided members with offices, equipment, and staff, who are, for the most part, city employees. The staff was rotated among the doctors. Members needed approval for days off and their paid lunch break was eliminated without negotiation. Members had to see twenty-two patients each day. Again, this number was increased without negotiation. The city also required members to have certain training. Members were paid on an hourly basis, but could only earn up to a certain amount each year. The city paid the doctors on an hourly basis because it found the previous voucher system untenable.

The test used by the MERC for determining whether an individual is an employee or an independent contractor is (1) whether the employer maintains control over the manner and means of performing the work as well as the end to be achieved and (2) whether the work done by the individual can be characterized as an integral part of a common task. *City of Detroit, Health Dep't v*

*American Federation of State, County & Municipal Employees, Michigan Council 25 (AFSCME),* 1985 MERC Lab Op 920, 923, reconsideration den, 1985 MERC Lab Op 1121; *State Judicial Council (Third Judicial Circuit Court) v AFSCME, Local 1659 & AFSCME, Michigan Council 25,* 1984 MERC Lab Op 545, 552. See, e.g., *Parham v Preferred Risk Mutual Ins Co,* 124 Mich App 618, 622-623; 335 NW2d 106 (1983). A contract between the parties which states that their relationship is that of an independent contractor is also a factor to be considered, although it is not determinative. *City of Detroit, Health Dep't, supra,* p 923; *State Judicial Council (Third Judicial Circuit Court), supra,* p 552.

In *City of Detroit, Health Dep't, supra,* the MERC held that the individuals were employees despite a contract designating them independent contractors because (1) the individuals were trained, supervised, and given assignments by other city employees, (2) the equipment used by the individuals was furnished by the city, (3) the individuals had regular hours and received hourly pay, although they received no benefits and had no taxes withheld, (4) they worked with other city employees and interchanged functions with them, and (5) the city applied its employee disciplinary rules to the individuals.

Similarly, in *State Judicial Council (Third Judicial Circuit Court), supra,* the MERC again found individuals who had executed an independent contractor agreement to be employees because (1) the individuals were supervised and received tasks from the employer's supervisor, (2) they were paid on an hourly basis rather than from profits or by fees as is customary of independent contractors, (3) they worked in the employer's building and used the employer's equipment, and (4) they performed

tasks which were integrated with those of the employer's other employees or which could be performed by the employer's other employees.

In this case, the city claims that it does not maintain control over the manner and means of providing medical service because the doctors may treat the patients in any manner consistent with their professional judgment. The city concedes it uses a clinical system to provide its health care services. While the MERC agreed that the city did not review the doctors' diagnoses and treatment of patients, the MERC concluded that the city retained significant control over the manner and means by which the doctors performed their professional function. The city set the physicians' hours, determined the number of patients they saw, and provided the doctors with support staff and equipment. The city also paid the doctors on an hourly basis and determined the hospital to which the doctors would admit patients. The MERC further found that the doctors' work was an integral part of the city's task of providing health care services for its residents. We believe that the MERC's determination is supported by competent, material, and substantial evidence on the record and, therefore, we decline to disturb it. MCL 423.216(d); MSA 17.455(16)(d). *Michigan Educational Support Personnel Ass'n, supra,* pp 716-717.

The city also claims that the physicians were temporary employees because their contracts expired on a definite date. The city relies on *State Judicial Council (Third Judicial Circuit Court), supra,* p 553, where the MERC held that when a contract contained no expiration date the existence of a termination clause did not make the employees temporary. However, in *City of Detroit, Health Dep't, supra,* p 924, the MERC clarified its decision in *State Judicial Council (Third Judicial*

*Circuit Court).* In *City of Detroit, Health Dep't, supra,* the employees, whose jobs depended on federal funding and who had year-to-year contracts, like the ones in the present case, were held to be employees with indefinite terms. Following the employer's petition for rehearing in *City of Detroit, Health Dep't, supra,* p 1122, the MERC held that the employees, whose contracts ran from year-to-year, had a reasonable expectation of continued employment after their contracts expired. In fact, despite the presence of the year-to-year contracts, the employees had worked for the employer for several years. *Id.* Apparently, the MERC only treats those individuals with a definite termination date and with no expectation of renewal as temporary employees. In this case, the MERC found that while the doctors had year-to-year contracts, they had, in fact, been renewed for four years. Because these doctors had a reasonable expectation of further employment, the MERC concluded that they were not temporary employees. Again, we hold that the MERC's decision was supported by competent, substantial and material evidence and we affirm it. MCL 423.216(d); MSA 17.455(16)(d). *Michigan Educational Support Personnel Ass'n, supra,* pp 716-717.

We now turn to the city's issues concerning the issuance of the preliminary injunction. In *Michigan State Employees Ass'n v Dep't of Mental Health,* 421 Mich 152, 157-158; 365 NW2d 93 (1984), our Supreme Court held:

> Whether a preliminary injunction should issue is determined by a four-factor analysis: harm to the public interest if an injunction issues; whether harm to the applicant in the absence of a stay outweighs the harm to the opposing party if a stay is granted; the strength of the applicant's demonstration that the applicant is likely to prevail on

> the merits; and demonstration that the applicant will suffer irreparable injury if a preliminary injunction is not granted.

This Court has held that the decision to grant a preliminary injunction is within the trial court's discretion. *Bratton v Detroit Automobile Inter-Ins Exchange,* 120 Mich App 73, 79; 327 NW2d 396 (1982). The object of a preliminary injunction is to preserve the status quo (i.e., the noncontested status which preceded the pending controversy). *Id.* An injunction should not be granted if the party seeking it has an adequate remedy at law or if it will give one of the parties all the relief requested prior to a hearing on the merits. *Id.*

In *Van Buren Public School Dist v Wayne Circuit Judge,* 61 Mich App 6; 232 NW2d 278 (1975), the plaintiff's bus drivers were union members since 1965. In 1972, the plaintiff subcontracted the drivers' work without negotiating with the union. The union sought and was granted a preliminary injunction. The plaintiff appealed, claiming that the union had not suffered irreparable harm and that it had an adequate remedy at law (i.e., unfair labor practice hearings before the MERC). This Court disagreed, finding that in the absence of an injunction the plaintiff's decision to subcontract work would become irrevocable and, therefore, the plaintiff and the union would not have anything left to bargain about. *Id.,* 17. This Court further held that MERC's remedies of back pay and reinstatement were inadequate because they were not immediately available. *Id.*

In this case, the city claims that there was no irreparable harm. The circuit court found that the union would be irreparably harmed if the injunction was not issued because if the city subcontracted some of its work, there would be nothing

left to bargain over. Similarly, if all the union's members were discharged rather than having their contracts renewed, there would be no one with whom the city could bargain. We note that the union's members, needing jobs, would eventually take other positions and might be unable to return if the union ultimately prevailed in its unfair labor practice charges.

The trial court found *Van Buren Public School Dist, supra,* dispositive on this issue. The city now attempts to distinguish that case by claiming that it involved a small union of bus drivers who were "displaced" by the employer's action in refusing to bargain with them despite the long-term (six-year) existence of a collective bargaining agreement. Here, the employees' contracts expired and the city chose not to renew them. We agree with the trial court that the harm described in *Van Buren Public School Dist, supra,* can occur even where no collective bargaining agreement exists. To accept the city's rule would allow an employer to commit an allegedly unfair labor practice following or prior to union organizing without providing a remedy to the union which would preserve its rights.

The city also claims that there was an adequate remedy at law. We agree with the circuit court that the remedies available to the union following the resolution of its unfair labor practice charge were inadequate. As noted above, the union's members, who needed jobs, would have to accept other positions and their bargaining unit would be destroyed. *Van Buren Public School Dist, supra,* p 17. Moreover, if a subcontract was entered into the remedies available to the MERC could not restore the status quo between the parties. *Id.*

The trial court further found that the union's claims concerning the unfair labor practice were

not so incredible that the union could not prevail. The city, at oral argument before this Court, opted not to pursue its challenge to that finding. The city also does not challenge the court's findings that the union would be more harmed if an injunction was not granted than the city would be if an injunction was granted. The court further found the public would not be harmed if an injunction was issued. Balancing these factors, we believe that the trial court properly granted the injunction. *Michigan State Employees Ass'n, supra,* pp 157-158.

The city, however, claims that the circuit court did more than restore the status quo. *Bratton, supra,* 79. Again, the city claims that the status quo was the expiration of the employees' contracts on June 30 at midnight. We note that it was the city's refusal to bargain with the newly-certified union because of its reliance on the midnight deadline, which, along with the city's refusal to provide a timely *Excelsior* list (*Excelsior Underwear, Inc v Amalgamated Clothing Workers of America, AFL-CIO,* 61 LRRM 1217 [1966]), led to the unfair labor practice charges. Hence, the status quo was the city's continued employment of the unionized doctors. *Bratton, supra,* p 79.

We also reject the city's claim that the injunction was invalid because the city council's approval was necessary for the physicians to work past midnight on June 30. Detroit Ordinances, § 21-3-6. We note that the city's claim again relates to the outcome of the unfair labor practice charges, which the city concedes it no longer contests for purposes of granting the injunction. We further note that the physicians testified that they continued to work for the city on previous occasions even though their present contracts had expired and they were waiting for renewal. In any

event, the public employment relations act supersedes conflicting law. *Central Michigan University Faculty Ass'n v Central Michigan University,* 404 Mich 268, 279; 273 NW2d 21 (1978), reh den 406 Mich 1117 (1979).

Affirmed.