ADAMS v WEST OTTAWA PUBLIC SCHOOLS

Docket No. 272184. Submitted December 4, 2007, at Grand Rapids. Decided January 3, 2008, at 9:05 a.m.

The Michigan Employment Security Board of Review affirmed a decision by a hearing referee in the Department of Labor and Economic Growth, Unemployment Insurance Agency, that claimants Susan Adams and other employees of the West Ottawa Public Schools (WOPS) were ineligible to receive unemployment benefits because the period for which the benefits were sought was a so-called "school denial period," as provided in MCL 421.27(i)(2). That statute sets out an exception to the payment of such benefits for the period between two successive academic years or terms where the claimant performs services for an educational institution that are not instructional, research, or principally administrative and there is reasonable assurance of continued employment. The claimants, school bus drivers who, although employed by WOPS as bus drivers during the traditional school year, provided busing services to the Ottawa Area Center (OAC) operated by the Ottawa Intermediate School District (OISD) under a contract between the OISD and WOPS during the summer months to accommodate the year-round schedule of the OAC, sought unemployment benefits for the summer months after the OISD discontinued contracting with WOPS for busing services to the OAC. The claimants were assured by WOPS that they would be employed by WOPS in the traditional academic year following the summer period and were thus employed. The claimants appealed the decision of the board of review to the Ottawa Circuit Court and the court, Jon A. Vanallsburg, J., affirmed the decision of the board of review. The claimants appealed by leave granted.

The Court of Appeals *held*:

MCL 421.27(i)(2) precludes employees who perform services for an educational institution from collecting unemployment benefits in the period between two successive academic years where there is reasonable assurance of continued employment. The educational institution defines the academic year. In this case, WOPS, the claimants' employer, is the educational institution that defined the academic year for purposes of the denial provision. The

traditional academic year, with the usual summer break, under which WOPS operates controls in this case. The claimants are not entitled to unemployment benefits for the period between the two successive academic years of the WOPS during which they previously had received optional, additional employment to bus students to the OAC.

Affirmed.

Unemployment Compensation — Schools — Academic Years — Intervening Periods.

Employees who perform services for an educational institution that are not instructional, research, or principally administrative are barred from receiving unemployment benefits for the period between two successive academic years or terms where the employees have reasonable assurance of continued employment following that period; the employing educational institution defines the academic year (MCL 421.27[i][2] and [8]).

*Kalniz, Iorio & Feldstein Co., L.P.A.* (by *Krista Durchik*), for Susan Adams and others.

*Nantz, Litowich, Smith, Girard & Hamilton, P.C.* (by *John H. Gretzinger*), for West Ottawa Public Schools.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Julie M. Jensen* and *Thomas C. Johnson*, Assistant Attorneys General, for the Department of Labor and Economic Growth, Unemployment Insurance Agency.

Before: Bandstra, P.J., and Meter and Beckering, JJ.

Per Curiam. Appellants are school bus drivers who appeal, by leave granted, the lower court's order affirming the Michigan Employment Security Board of Review's order denying them unemployment benefits. We affirm.

The essential dispute here is whether the so-called "school denial period" in MCL 421.27(i)(2) bars appellants' receipt of unemployment benefits. That subsec-

tion sets out an exception to the payment of such benefits. It states, in pertinent part:

> With respect to service performed in other than an instructional, research, or principal administrative capacity for . . . an educational institution . . . benefits shall not be paid based on those services for any week of unemployment . . . that commences during the period between 2 successive academic years or terms to any individual if that individual performs the service in the first of the academic years or terms and if there is a reasonable assurance that the individual will perform the service for an . . . educational institution . . . in the second of the academic years or terms.

In simpler terms, employees working for an educational institution, who are not teachers, researchers, or principal administrators, may not receive unemployment benefits during summer break if they have a reasonable assurance that they will be working in the academic year that follows the summer break. (The same exception is applicable to teachers, researchers, and principal administrators under MCL 421.27[i][1], and to all educational employees for established and customary vacation periods or holiday recesses under MCL 421.27 [i][3], but that is not pertinent to this appeal.) MCL 421.27(i)(8) defines "academic year" as

> that period, as defined by the educational institution, when classes are in session for that length of time required for students to receive sufficient instruction or earn sufficient credit to complete academic requirements for a particular grade level or to complete instruction in a noncredit course.

The facts are undisputed. Appellants are employed as school bus drivers for West Ottawa Public Schools (WOPS). WOPS operates on a traditional school-year calendar with the usual summer break. The Ottawa Intermediate School District (OISD) operates the Ottawa Area Center (OAC), which is a school for special-

needs students from all the school districts in Ottawa County and some in Allegan County. For more than 30 years preceding the 2003 school year, the OISD contracted with WOPS to provide busing services to the OAC from all the school districts served by the OISD. The OAC operates year round, with only a two-week break in June and a two-week break in August, as well as a winter and a spring break. That schedule gave appellants the opportunity to drive buses during the summer months.

Appellants are members of, and are represented by, the West Ottawa Transportation Association. Under article 16 of the collective-bargaining agreement between the association and WOPS, bus drivers and bus aides bid each August for the upcoming traditional academic year's bus runs. Those who do not select a regular run are deemed to have resigned. There is a separate bidding process under article 17 for summer bus runs. There is no obligation to bid on them and the failure to bid on a summer bus run does not affect the ability of the driver or aide to bid on the next traditional academic year's bus runs.

In the spring of 2003, the employees were told that the OISD had decided not to further contract with WOPS for busing services for the OAC, and that beginning in the fall semester of 2003, Dean Transportation would be providing those services. Thus, appellants would not be able to bid on summer bus runs for the summer of 2004. On April 28, 2004, appellants were given reasonable assurance that they would be employed by WOPS during the 2004-2005 traditional academic year and, in fact, they were all hired for that year. Appellants sought unemployment benefits for the summer months of 2004 and were either denied benefits or were sent requests for repayment after benefits were

initially paid. WOPS's position was that appellants were ineligible for benefits because they were subject to the school denial period and they had been given a reasonable assurance of employment for the next traditional academic year. This determination was eventually affirmed at the Employment Security Board of Review and, on appeal, by the circuit court.

This Court's review of a trial court's review of an agency determination is limited. *Bureau of Worker's & Unemployment Compensation v Detroit Med Ctr*, 267 Mich App 500, 503; 705 NW2d 524 (2005), citing *Dana v American Youth Foundation*, 257 Mich App 208, 211; 668 NW2d 174 (2003). This Court "must determine ' "whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings." ' " *Detroit Med Ctr, supra* at 503-504, quoting *Dana, supra* at 211, quoting *Boyd v Civil Service Comm*, 220 Mich App 226, 234; 559 NW2d 342 (1996). Thus, we review the trial court's decision for clear error, and will overturn the trial court's decision only if we are left with the definite and firm conviction that a mistake has been made. *Detroit Med Ctr, supra* at 504. Questions of statutory interpretation are reviewed de novo. *Id.*; *Dana, supra* at 211.

The question before this Court is whether appellants were unemployed between "2 successive academic years . . . ." See MCL 421.27(i)(2). If so, appellants are not entitled to unemployment benefits because their unemployment occurred within a denial period. *Id.* Appellants argue that they were not unemployed between two successive academic years because they traditionally were employed year-round, in accordance with the OAC calendar. Appellees argue that the period of unemployment was between two successive academic

years because it occurred during the summer months dividing two traditional academic years at WOPS.

There is no Michigan authority interpreting the school denial provision in this context. The trial court relied on *Becotte v Gwinn Schools*, 192 Mich App 682; 481 NW2d 728 (1992), in reaching its conclusion that the school denial provision barred appellants from receiving unemployment benefits. However, this reliance was misplaced. *Becotte* did not decide whether the claimants there could have been denied benefits because their period of unemployment was between two successive academic years, so it is not instructional on the issue presented here. Therefore, the trial court erred by applying *Becotte* because it did not apply the correct legal principles. See *Detroit Med Ctr, supra* at 503.

However, we can affirm the trial court's decision because the trial court reached the correct result, albeit for the wrong reason. *Computer Network, Inc v AM Gen Corp*, 265 Mich App 309, 313; 696 NW2d 49 (2005). We do so by examining the language of MCL 421.27(i)(2) and MCL 421.27(i)(8). "The primary goal in statutory construction is to ascertain and give effect to the Legislature's intent. We look first to the specific language of the statute, presuming that the Legislature intended the meaning it has plainly expressed. If the language is clear and unambiguous, judicial construction is neither required nor permitted, and the statute must be enforced as written." *Detroit Med Ctr, supra* at 504. (Citations omitted.)

The plain language of MCL 421.27(i)(2) precludes employees who perform services for "an educational institution" from collecting unemployment benefits between two successive academic years. The educational institution defines the "academic year." MCL

421.27(i)(8). However, the statute does not specify how to treat a situation, such as this, where an employee could be seen as providing services to two educational institutions, WOPS and the OISD, with two different academic years.

We conclude that the applicable academic calendar should be dictated by appellants' employer, in this case WOPS. For purposes of the Michigan Employment Security Act, "employment" is defined as "service . . . performed for remuneration or under any contract of hire, written or oral, express or implied." MCL 421.42(1). However, "[s]ervices performed by an individual for remuneration shall not be deemed employment subject to this act, unless the individual is under the employer's control or direction as to the performance of the services both under a contract for hire and in fact." MCL 421.42(5). WOPS clearly employed appellants as defined by the statute, because appellants performed services for remuneration for WOPS, i.e., they drove buses provided by WOPS, and they had a collective bargaining agreement, i.e., a contract for hire, with WOPS. Appellants "in fact" worked for WOPS because WOPS controlled the performance of their services. WOPS hired, paid, and, presumably, had the power to fire appellants. WOPS set the bus route schedules, procured additional routes with the contract with the OISD, and facilitated the bidding process.

Appellants were not employed by the OISD because the OISD did not pay them, they did not have a "contract of hire" with the OISD, and there is no evidence in the record that the OISD had any control over the performance of their services. Other than driving the OAC students under the contract WOPS made with the OISD, appellants appear to have no connection whatsoever with the OISD. Although appel-

lants drove the OAC bus routes, and in that sense "performed services" for the OISD, by driving the OAC routes, appellants were, in fact, performing services for WOPS because they were fulfilling WOPS's contractual duties to the OISD. Because WOPS employed appellants, WOPS was the educational institution for whom appellants performed services, and, therefore, WOPS is the educational institution that defines the "academic year" for purposes of the school denial provision. See MCL 421.27(i)(2); MCL 421.27(i)(8).

This conclusion is consistent with *Larkin v Bay City Pub Schools*, 89 Mich App 199; 280 NW2d 483 (1979). In *Larkin*, the school district terminated the employment of a hall monitor, who had never worked during a summer-vacation period, in June. *Id.* at 202. The district informed the hall monitor that her services were not required for the following school year. *Id.* This Court rejected the plaintiff's argument that her unemployment did not fall between successive academic years because she would not be employed during the next academic year. *Id.* at 205. The *Larkin* panel opined:

> [P]laintiff's claim that a subjective standard should be used for determining holidays, vacations, or the period between terms or school years would render section 27(i)(4)[1] meaningless. The existence of an academic year, as envisioned by the Legislature, is to be determined by the objective criteria of the calendar established by the district, and not by the individual's particular circumstances. [*Id.*]

Although *Larkin* does not address the situation presented in this case, where two educational institutions are involved, allowing appellants to use the OISD's calendar to determine their unemployment eligibility

---

[1] The relevant school denial provision is now contained in MCL 421.27(i)(2).

would be in contravention of this Court's conclusion in *Larkin*. The academic year is that established by the employing district, not that dictated by an individual's circumstances. Our decision that the educational institution that actually employs appellants (i.e., WOPS) defines the "academic year" arises from an objective standard, and appellants' individual circumstances do not change their eligibility status.

We thus conclude that the agency's decision was consistent with the statute. We further conclude that the trial court did not err by " ' "misapprehend[ing] or grossly misappl[ying] the substantial evidence test to the agency's factual findings." ' " *Detroit Med Ctr, supra* at 503-504 (citations omitted). "Substantial evidence is evidence that reasonable persons would accept as sufficient proof to support a decision." *Motycka v Gen Motors Corp*, 257 Mich App 578, 581; 669 NW2d 292 (2003). Appellants argue that the trial court committed clear error when it affirmed the agency's decision that appellants worked a traditional school-year schedule because there is substantial evidence on the record that appellants worked year round. Although, as appellants allege, there is evidence on the record that they worked during the summer, that does not necessitate a finding that appellants were year-round employees. Rather, the OAC calendar, payroll records, and summer-bid records merely show that appellants took advantage of additional employment offered between academic years. The summer bus routes were optional, and appellants had to bid for the routes in a separate bidding process to secure them. Also, this optional summer employment was never guaranteed; it would not have been available at all, except for the contract between WOPS and the OISD.

We affirm.