BUCKLEY v PROFESSIONAL PLAZA CLINIC CORPORATION

Docket No. 277028. Submitted August 12, 2008, at Detroit. Decided October 2, 2008, at 9:10 a.m. Leave to appeal sought.

Alice Buckley filed a complaint in the Department of Labor and Economic Growth (DLEG), Wage and Hour Division, alleging that Professional Plaza Clinic Corporation (PPCC), for whom Buckley provided medical services pursuant to an employment agreement, had failed to pay her wages that she was owed. DLEG determined that Buckley was entitled to back pay, with interest, under the payment of wages and fringe benefits act, MCL 408.471 et seq. PPCC appealed to a DLEG hearing referee, arguing that Buckley was an independent contractor and not an employee. The hearing referee applied the economic reality test and ruled that, although the employment agreement made references to Buckley as an independent contractor, Buckley was in fact an employee. PPCC appealed in the Wayne Circuit Court, Michael J. Callahan, J., which reversed the ruling of the hearing referee. DLEG and Buckley appealed by leave granted.

The Court of Appeals held:

1. The correct legal test to determine whether Buckley was an employee or an independent contractor, for purposes of the payment of wages and fringe benefits act, is the economic reality test, because the act is remedial in nature and the economic reality test is consistent with the act's purposes. Accordingly, the circuit court applied an incorrect principle of law when it failed to use the economic reality test to review the hearing referee's decision.

2. The circuit court clearly erred by ignoring the substantial evidence on which the hearing referee relied in ruling that Buckley was an independent contractor rather than an employee. A reviewing court may not set aside factual findings that are supported by the evidence merely because alternative findings could also have been supported by the evidence, or because the court might have reached a different result.

Reversed.

ADMINISTRATIVE LAW — PAYMENT OF WAGES AND FRINGE BENEFITS ACT — EMPLOYER-EMPLOYEE RELATIONSHIP — ECONOMIC REALITY TEST.

The correct standard for determining whether a person is an

employee under the payment of wages and fringe benefits act is the economic reality test, whose nonexclusive factors include the control of the worker's duties; the payment of wages; the right to hire, fire, and discipline; and the performance of the duties as an integral part of the employer's business toward the accomplishment of a common goal (MCL 408.471 *et seq.*).

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Susan Przekop-Shaw* and *Richard P. Gartner*, Assistant Attorneys General, for the appellants.

*Aziz Khondker* for the appellee.

Before: MURRAY, P.J., and WHITBECK and TALBOT, JJ.

PER CURIAM. This case involves a wage dispute under Michigan's payment of wages and fringe benefits act (payment of wages act).[1] Appellant Alice Buckley, M.D., sought allegedly unpaid wages from appellee Professional Plaza Clinic Corporation (PPCC), which PPCC refused to provide. Appellant Department of Labor and Economic Growth agreed with Dr. Buckley and awarded her $15,979.14 in back pay, plus 10 percent annual interest and a $1,000 civil penalty. PPCC appealed the department's determination and order to a hearing referee, who affirmed. The trial court reversed, ruling that Dr. Buckley was an independent contractor and was not entitled to any unpaid wages under the payment of wages act. The department and Dr. Buckley now appeal by leave granted. We reverse the judgment of the circuit court and reinstate the decision of the hearing referee.

### I. BASIC FACTS AND PROCEDURAL HISTORY

Dr. Buckley is an internal medicine physician. On November 19, 2004, Dr. Buckley entered into an em-

---

[1] MCL 408.471 *et seq.*

ployment agreement (the agreement) with PPCC to provide medical services to patients at the facility. Under the agreement, PPCC was to pay Dr. Buckley $130,000 for a one-year term, which equaled $2,500 a week. The agreement contained references to both "employee" and "independent contractor." More specifically, the agreement contained the following relevant provisions:

> EMPLOYEE: In its usual sense employee is a person over whom Employer has control as to time or attendance and the employee is engaged in furtherance of Employer's business. This Employment Agreement (hereinafter Agreement) deals with an agreement between a corporate employer and an Independent Contractor unless otherwise noted.
>
> INDEPENDENT CONTRACTOR: Employee is encouraged to consult IRS code related to an independent contractor, mainly "whose control" and "whose business" tests.
>
> PREAMBLE
>
> Agreement made on November 01, 2004[2] between Professional Plaza Clinic Corporation, a corporation organized and existing under the laws of the State of Michigan, with its principal office located at 3800 Woodward Avenue, Detroit, Wayne County, Michigan, referred to in this agreement as employer, and Dr. Alice Buckley, of 3800 Woodward Avenue, Detroit, Wayne County, Michigan, referred to in this agreement as employee.

The agreement provided that the employer would determine the "employee's specific duties" and that the employer had discretion in "setting the days of the week and hours in which employee is to perform employee's

---

[2] "Section Two" of the agreement, entitled "Term of Employment," stated that the agreement "was effective on November 19, 2004 and shall remain in effect until November 19, 2005 . . . ."

duties[.]" The remaining sections of the agreement also used the term "employee." However, the term "independent contractor" occurred again at the signature line. Dr. Buckley did not sign the agreement itself, but rather an amendment of the agreement.

On November 23, 2004, Dr. Buckley also signed a W-9 (usually supplied to independent contractors and other self-employed workers). Under this arrangement, PPCC did not withhold any money from Dr. Buckley's paycheck, and she was responsible for paying taxes herself. Dr. Buckley paid her state and federal income taxes using a 1099 form (for independent contractors).

During the time that she worked at PPCC, Dr. Buckley received three checks, each for $2,500, and two others for $3,300 and $1,450, for a total of $12,250. However, Dr. Buckley voluntarily stopped working for PPCC on February 11, 2005, allegedly because PPCC was behind in paying her and she did not want to work without getting paid. Dr. Buckley filed a complaint with the department's Wage and Hour Division, alleging that PPCC failed to pay her wages owed. The department agreed with Dr. Buckley and awarded her $15,979.14 in back pay for "wages earned from November 1, 2004 to February 11, 2005." The department also ordered PPCC to pay 10 percent annual interest and a $1,000 civil penalty if the amount was not voluntarily paid.

PPCC appealed that determination before a department hearing referee, contending that Dr. Buckley was an independent contractor and had been paid in full. Dr. Buckley maintained that she was an employee entitled to unpaid wages.

During an August 2006 hearing before the hearing referee, Andrea McBride, PPCC's chief executive officer, testified that the employment agreement that Dr. Buckley signed was created as a general document to be

used "for employment of the doctors . . . as they [came] in." As in Dr. Buckley's case, an amendment was then prepared detailing each particular doctor's salary. Contrary to Dr. Buckley's testimony, McBride testified that Dr. Buckley started working on November 20, 2004, and then worked again on November 23, 29, and 30. In December 2004, McBride testified, Dr. Buckley worked 11 days. McBride further stated that Dr. Buckley worked six days in January 2005, and six days in February 2005. McBride stated that Dr. Buckley worked an average of seven hours a day on the days that she worked in November through February. McBride believed that although Dr. Buckley was not paid the whole monthly salary in November, December, January, or February, PPCC did pay Dr. Buckley in full for the services provided on the days she worked. However, McBride testified that doctors at the clinic are paid the same rate, whether they go over or under a few hours, because it balances out over the long run. McBride stated that she did not dictate what time Dr. Buckley came to work and that Dr. Buckley had full control over her patients. McBride also admitted that she could have fired Dr. Buckley for allegedly unruly conduct (McBride testified that Dr. Buckley "would get upset, fly off the handle, walk out of the clinic, [and] curse"), but she did not because Dr. Buckley told her that "she was going through some issues."

PPCC's office manager, Linda Foster, testified that Dr. Buckley started working at PPCC during the first week of November 2004. Foster also testified that Dr. Buckley was to be paid on a weekly basis while employed and that she was expected to work 40 hours each week. According to Foster, Dr. Buckley worked 40 hours a week in November and December, and for only a couple of weeks in January and "not that much" in February because Dr. Buckley was not getting paid.

However, Foster noted that no time sheets were kept and that she did not know exactly how many hours Dr. Buckley worked. Foster testified that she believed that Dr. Buckley was a salaried employee.

Dr. Buckley also testified during the hearing. According to Dr. Buckley, she began working for PPCC on November 2, 2004, as a salaried employee. Dr. Buckley confirmed that she signed the W-9 form and that PPCC did not withhold taxes from her paychecks, but she claimed that PPCC told her that it would start withholding taxes once it got a payroll system in place. She asserted that she controlled her own hours, but she claimed that she was supposed to, and did, work from 9:00 a.m. to 5:00 p.m. for all four weeks in November, excluding the Thanksgiving holiday. She believed that as a salaried employee she was supposed to be paid for the holiday. She stated that she also worked full time in December, or 4½ weeks, with the understanding that she would be paid for the days she took off for personal reasons and holidays. Dr. Buckley explained that she began limiting her hours in January 2005, working only just over 50 hours, because PPCC was behind in paying her and she did not see the sense in working and not getting paid.

In his written decision, the hearing referee determined that Dr. Buckley worked at PPCC from November 2, 2004, through February 11, 2005. Although acknowledging that there was some reference to "independent contractor" in the agreement, the hearing referee applied the economic reality test[3] and found it significant that the employment agreement outlined the parties' responsibilities and set forth Dr. Buckley's duties, hours, compensation, and vacation time. Therefore, the hearing referee determined that Dr. Buckley was a PPCC employee for the entire period in question.

---

[3] See *Askew v Macomber*, 398 Mich 212, 217-218; 247 NW2d 288 (1976).

On the basis of his calculations of Dr. Buckley's time worked, the hearing referee adjusted the amount that PPCC owed Dr. Buckley to "$15,500.00 at the rate of 10% per annum, together with a civil penalty in the amount of $1000.00 if payment is not voluntarily made."

PPCC thereafter appealed to the circuit court,[4] arguing that the evidence and testimony established that Dr. Buckley was an independent contractor. PPCC conceded that Dr. Buckley worked at PPCC from November 2, 2004, through February 11, 2005, but it argued that the hearing officer erred in awarding Dr. Buckley two entire months' pay for November and December 2004, because she only worked 4 days in November and 12 days in December. PPCC further argued that the proper test to determine whether Dr. Buckley was an employee or an independent contractor was the test used by the Internal Revenue Service (IRS), which examined behavioral control, financial control, and the relationship of the parties. Therefore, PPCC asserted, the hearing referee erred in applying the economic reality test.

The department maintained that Dr. Buckley was an employee, pointing to the repeated use of the term "employee" in the agreement. Further, the department pointed out, the agreement gave PPCC the power to set forth Dr. Buckley's duties and hours, and provided that PPCC was responsible for supplying Dr. Buckley with an office and all necessary equipment. The department also argued that the termination for cause and noncompete clauses in the agreement supported the existence of an employer-employee relationship, noting that such clauses would not have been necessary for an independent contractor.

---

[4] See MCL 408.481(9).

The circuit court found it significant that PPCC did not withhold income taxes for Dr. Buckley and that she paid her own taxes as an independent contractor. The circuit court also noted, despite the language of the employment agreement, that "[t]he clinic clearly treated her as an independent contractor by not dictating her professional duties, by not dictating her hours." Accordingly, the circuit court reversed, ruling that Dr. Buckley was an independent contractor. The department and Buckley now appeal.

## II. CONTRACTUAL AMBIGUITY AND THE ECONOMIC REALITY TEST

### A. STANDARD OF REVIEW

The department and Dr. Buckley contend that the circuit court exceeded the scope of its appellate review and applied the wrong legal standard when it ruled that Dr. Buckley was not PPCC's employee.

This Court's review of a circuit court's ruling on an appeal from an administrative decision is limited.[5] "This Court must determine whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings."[6] This standard is synonymous with the clear-error standard of review.[7] Under this standard, this Court will only overturn the circuit court's decision if, on review of the whole record, it is left with a "definite and firm conviction that a mistake has been made."[8] A circuit court's review of administrative proceedings is limited to deter-

---

[5] *Adams v West Ottawa Pub Schools*, 277 Mich App 461, 465; 746 NW2d 113 (2008).

[6] *Id.* (quotation marks and citations omitted).

[7] *Id.*

[8] *Id.*

mining whether the decision was authorized by law and supported by competent, material, and substantial evidence on the whole record.[9] "Substantial evidence is that which a reasonable mind would accept as adequate to support a decision. It is more than a mere scintilla but less than a preponderance of the evidence."[10] When there is sufficient evidence, the circuit court must not substitute its discretion for that of the administrative tribunal even if the court might have reached a different result.[11] It does not matter that alternative findings also could have been supported by substantial evidence on the record.[12] The circuit court must give deference to the agency's findings of fact.[13]

> [A]gency interpretations are entitled to respectful consideration, but they are not binding on courts and cannot conflict with the plain meaning of the statute. While the agency's interpretation may be helpful in ascertaining the legislative intent, courts may not abdicate to administrative agencies the constitutional responsibility to construe statutes. Giving uncritical deference to an administrative agency would be such an improper abdication of duty.[14]

### B. EMPLOYEE'S RIGHT TO RECOUP UNPAID WAGES UNDER THE PAYMENT OF WAGES ACT

The payment of wages act provides, in pertinent part, regarding voluntary termination of employment: "An

---

[9] Const 1963, art 6, § 28; *In re Complaint of Rovas against SBC Michigan*, 482 Mich 90, 99-100; 754 NW2d 259 (2008); *VanZandt v State Employees' Retirement Sys*, 266 Mich App 579, 588; 701 NW2d 214 (2005).

[10] *In re Kurzyniec Estate*, 207 Mich App 531, 537; 526 NW2d 191 (1994) (citation omitted).

[11] *VanZandt, supra* at 584.

[12] *Dep't of Community Health v Risch*, 274 Mich App 365, 373; 733 NW2d 403 (2007).

[13] *VanZandt, supra* at 588.

[14] *In re Rovas Complaint, supra* at 117-118.

employer shall pay to an employee voluntarily leaving employment all wages earned and due, as soon as the amount can with due diligence be determined."[15] Concomitantly, the act allows an employee to file a complaint with the department to recoup any allegedly unpaid wages.[16]

### C. DEFINITIONS

The payment of wages act defines "employee" as an "individual employed by an employer."[17] It defines "employer" as "an individual, sole proprietorship, partnership, association, or corporation, public or private . . . who employs 1 or more individuals."[18] And it defines "employ" as "to engage or permit to work."[19] It prescribes a number of rules that employers must follow, such as withholding of taxes and timing of pay period days.[20]

This Court has defined an independent contractor as " 'one who, carrying on an independent business, contracts to do work without being subject to the right of control by the employer as to the method of work but only as to the result to be accomplished.' "[21]

### D. DETERMINATION OF CORRECT LEGAL PRINCIPLE

"As this Court has repeatedly recognized when interpreting the terms 'employ,' 'employer,' or 'employee' in different statutory and factual contexts, the existence of

[15] MCL 408.475(1).

[16] MCL 408.481.

[17] MCL 408.471(c).

[18] MCL 408.471(d).

[19] MCL 408.471(b).

[20] See MCL 408.472; MCL 408.474.

[21] *Kamalnath v Mercy Mem Hosp Corp*, 194 Mich App 543, 553; 487 NW2d 499 (1992), quoting *Parham v Preferred Risk Mut Ins Co*, 124 Mich App 618, 622-623; 335 NW2d 106 (1983).

an employment relationship is typically determined by examining a number of factors."[22] Our governmental agencies and courts have developed different tests, depending on the circumstances, to ascertain the true nature of an employment relationship.[23] For example, "[a] contract between the parties which states that their relationship is that of an independent contractor is . . . a factor to be considered, although it is not determinative."[24]

The economic reality test is the most common tool for discerning whether an employee-employer relationship exists. Although primarily applied in the context of remedial legislation, like workers' compensation matters,[25] courts have found the test instructive in other contexts as well. For example, in *Coblentz v City of Novi*,[26] the Michigan Supreme Court held that under the Freedom of Information Act provision allowing recovery of costs associated with employees, the economic reality test was the proper analytical framework.[27]

This test takes into account the totality of the circumstances around the work performed,[28] with an emphasis on the following factors:

---

[22] *Mantei v Michigan Pub School Employees Retirement Sys and Michigan Pub School Employees Retirement Bd*, 256 Mich App 64, 76; 663 NW2d 486 (2003).

[23] *Id.*

[24] *Detroit v Salaried Physicians Professional Ass'n, UAW*, 165 Mich App 142, 148; 418 NW2d 679 (1987).

[25] See, e.g., *Renfroe v Higgins Rack Coating & Mfg Co, Inc*, 17 Mich App 259, 264; 169 NW2d 326 (1969).

[26] *Coblentz v City of Novi*, 475 Mich 558; 719 NW2d 73 (2006).

[27] *Id.* at 578, addressing MCL 15.234(3). See also *Mantei, supra* at 79 ("[W]e conclude in the instant case, where respondeat superior liability is not at issue, that the economic-reality test is the appropriate legal tool with which to assess whether petitioner was 'employed by a reporting unit' under § 61 of the retirement act.").

[28] *Mantei, supra* at 79.

"(1) [the] control of a worker's duties, (2) the payment of wages, (3) the right to hire and fire and the right to discipline, and (4) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal."[29]

Under this test, no one factor is dispositive; indeed, the list of factors is nonexclusive and a court may consider other factors as each individual case requires.[30] However, "[w]eight should be given to those factors that most favorably effectuate the objectives of the statute in question."[31]

### E. APPLICATION OF CORRECT LEGAL PRINCIPLE

Here, the hearing referee applied the economic reality test. Again, Michigan courts have consistently applied the economic reality test in the context of social remedial legislation.[32] A "remedial law" is "[a] law providing a means to enforce rights or redress injuries" or "[a] law passed to correct or modify an existing law . . . ."[33] The payment of wages act is remedial in that it provides a means to enforce rights with respect to wages and fringe benefits and prescribes remedies for violations of these rights. Further, application of the economic reality test, which takes into account the payment of wages, does not conflict with the plain meaning of the statute.[34] Thus, the hearing referee

---

[29] *Clark v United Technologies Automotive, Inc*, 459 Mich 681, 688; 594 NW2d 447 (1999), quoting *Askew, supra* at 217-218 (alteration in *Clark*). See also *Mantei, supra* at 78-79.

[30] *Rakowski v Sarb*, 269 Mich App 619, 625; 713 NW2d 787 (2006); *Mantei, supra* at 79.

[31] *Rakowski, supra* at 626 (citation and quotation marks omitted).

[32] See, e.g., *Renfroe, supra* at 264.

[33] Black's Law Dictionary (8th ed).

[34] *In re Rovas Complaint, supra* at 117-118.

appropriately applied the test in this case because the test is consistent with the purposes of the payment of wages act.

Conversely, in the present matter, the circuit court did not explicitly articulate any principle of law that aided it in determining that Dr. Buckley was an independent contractor. Rather, the circuit court looked only to the facts that PPCC did not withhold any taxes from Dr. Buckley's paychecks and that PPCC lacked control over Dr. Buckley's duties and hours. Thus, we conclude that the circuit court clearly erred because it failed to apply, or misapplied, the economic reality test.

We note that PPCC attempts to support its position with reliance on the IRS's test for determining whether an individual is an independent contractor. However, PPCC cites no authority that this test should be applied in place of this jurisdiction's longstanding reliance on the economic reality test. And, more importantly, there is no indication in the record that the circuit court relied on the IRS test in making its determination.

### F. SUBSTANTIAL EVIDENCE

As previously stated, a circuit court's review of administrative proceedings is limited to determining whether the decision was authorized by law and supported by competent, material, and substantial evidence on the whole record.[35] And, here, substantial evidence adequately supported the hearing referee's decision that Dr. Buckley was an employee.

Evidence was presented that PPCC treated Dr. Buckley as an employee. PPCC's office manager testified that Dr. Buckley was a salaried employee paid on a weekly basis and that PPCC expected Dr. Buckley to

---

[35] Const 1963, art 6, § 28; *VanZandt, supra* at 588.

work 40 hours each week. PPCC's chief executive officer also testified that she had the authority to fire Dr. Buckley and that Dr. Buckley was to be paid the same rate each week, regardless of whether she worked over or under a few hours. Further, the agreement between Dr. Buckley and PPCC contained provisions indicating an employee-employer relationship. Specifically, the agreement set a term of employment, gave PPCC the power to determine Dr. Buckley's duties and hours, contained a noncompete clause, granted PPCC the discretion to terminate the relationship "for reasonable cause," and offered a "salary of $130,000" for a one-year commitment. This evidence was adequate to support a finding that Dr. Buckley was an employee.[36]

Nevertheless, the circuit court provided the following reasons for reversing the hearing referee's decision:

I think the judgment of the court below, the administrative law judge . . . must be reversed. I think he was flat out dead wrong on the issue of whether or not this woman was an independent contractor. I think all the evidence points to the fact that she was.

The contract contained language both ways whether she was an independent contractor or an employee. The clinic clearly treated her as an independent contractor by not dictating her professional duties, by not dictating her hours. I assume everybody knew she had to come when the patients were there. Otherwise she wouldn't be very effective as a doctor. They didn't withhold taxes. That's consistent with being an independent contractor.

In fact, if they did not withhold taxes and she was an employee, there [sic] were in clear violation of . . . the tax requirements of Michigan law for employers. I don't know why the judge below did what he did. Frankly, he had all the items of evidence in front of him and he simply concluded that wage and hourly applied and he would give

---

[36] See *In re Kurzyniec Estate, supra* at 537.

a result. He even compromised his result. I have no idea why he did that except it's a further indication to me that he decided incorrectly.

The judgment below is reversed. I find as a matter of law that the woman was an independent contractor . . . .

These statements reflect several instances of clear error. As already noted, the court failed to apply the economic reality test and focused its analysis primarily on the element of control. Further, the circuit court ignored the substantial evidence on which the hearing referee relied and made no assessment regarding whether that evidence adequately supported his decision. Rather, the circuit court simply concluded that the hearing referee reached the wrong outcome because all the evidence, in the court's view, indicated that Dr. Buckley was an independent contractor. According to the court, the referee was "flat out dead wrong" on the issue. However, as this Court has stated, "[a] reviewing court may not set aside factual findings supported by the evidence merely because alternative findings could also have been supported by evidence on the record or because the court might have reached a different result."[37] In this case, the hearing referee noted that while the agreement contained an "independent contractor" reference, the agreement nonetheless set forth Dr. Buckley's duties, hours, rate of compensation, and vacation time. The referee also stated that he relied on other evidence and testimony to conclude that Dr. Buckley was an employee. The fact that some of the evidence supported the finding that Dr. Buckley was an independent contractor does not warrant the circuit court's setting aside the referee's findings.

PPCC also asserts that the testimony of its office manager was inherently unreliable because she was a

_____

[37] *Risch, supra* at 373.

disgruntled employee and therefore a biased witness. However, "if the administrative findings of fact and conclusions of law are based primarily on credibility determinations, such findings generally will not be disturbed because it is not the function of a reviewing court to assess witness credibility or resolve conflicts in the evidence."[38]

### III. CONCLUSION

The circuit court applied an incorrect principle of law when it did not use the correct standard to review the hearing referee's decision. Further, substantial evidence supported the referee's decision that an employee-employer relationship existed between Dr. Buckley and PPCC. Accordingly, we reverse the judgment of the circuit court and reinstate the decision of the hearing referee.

Reversed.

---

[38] *Id.* at 372.