*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHIGAN OCCUPATIONAL SAFETY AND
HEALTH ADMINISTRATION,

FOR PUBLICATION
August 25, 2022

Appellant,

v

No. 355262
Ingham Circuit Court
LC No. 19-000950-AA

YODER FAMILY FARM,

Appellee.

Before: GLEICHER, C.J., and SAWYER and GARRETT, JJ.

SAWYER, J. (*dissenting*).

I respectfully dissent.

Yoder Family Farm (YFF) is owned by John Yoder. Yoder's 19-year-old son Alvin died in an accident while working on the farm. MIOSHA safety officer Joseph Bantau opened two inspections related to the accident. Following the inspections, appellant issued two citations to YFF and imposed a fine of $16,100. YFF appealed the citations, arguing that Alvin was part of a family farm and not an employee. Appellant denied the appeal. YFF protested and the case proceeded to a contested-case hearing before an Administrative Law Judge.

The ALJ concluded that dismissal of the citations was warranted. He concluded that Alvin was not an employee and was more akin to a student or volunteer on the farm. Appellant filed exceptions to the ALJ's proposed decision. The Board of Health and Safety Compliance and Appeals declined to order a review of the matter and the ALJ's ruling became the final agency decision. Appellant filed an appeal with the circuit court, which affirmed, concluding that this Court's decision in *Hottmann v Hottmann*,[1] was controlling, and that there was no employer-employee relationship in this case. I agree and would affirm.

---

[1] 226 Mich App 171; 572 NW2d 259 (1997).

The standard for reviewing the agency's decision is very clear. "A final agency decision is subject to court review but it must generally be upheld if it is not contrary to law, is not arbitrary, capricious, or a clear abuse of discretion, and is supported by competent, material and substantial evidence on the whole record."[2] "Substantial evidence is that which a reasonable mind would accept as adequate to support a decision, being more than a mere scintilla, but less than a preponderance of the evidence."[3] "If there is sufficient evidence, the circuit court may not substitute its judgment for that of the agency, even if the court might have reached a different result."[4] "This Court reviews a lower court's review of an administrative decision to determine whether the lower court applied correct legal principles and whether it misapprehended or misapplied the substantial evidence test to the agency's factual findings, which is essentially a clearly erroneous standard of review."[5] The decisions below are not contrary to law, not arbitrary or capricious nor a clear abuse of discretion. The agency's decision is supported by competent, material and substantial evidence on the whole record. The trial court recognized its role in reviewing the agency's decision and did not clearly err in affirming that decision. While the majority might have reached a different result than the final agency decision, that does not justify the majority substituting its judgment for that of the agency.

Appellant only had jurisdiction to issue the citations and impose the fines at issue if there was an employer-employee relationship between Alvin and the farm. MCL 408.1005(1) defines an employee as "a person permitted to work by an employer." MCL 408.1005(2) defines an employer, in pertinent part, as "an individual or organization . . . that employs 1 or more persons." "The interpretation and application of statutes and government regulations adopted pursuant to statutory authority present questions of law, which [this Court] review[s] de novo."[6]

Unlike the majority, I agree with appellee that this case is controlled by this Court's decision in *Hottmann*. In *Hottmann*,[7] the defendant asked his brothers to help install a new roof on his house and garage. The plaintiff was one of the brothers, and he explained that "he was not paid for his services and did not expect anything in return for his assistance."[8] The home's roof was steep, and while walking on it, the plaintiff fell and broke an arm.[9] The plaintiff filed suit, alleging premises liability and also alleging "that defendant negligently allowed him to work on the roof without following the safety precautions required by the Michigan Occupational Safety

---

[2] *Vanzandt v State Employees Retirement Sys*, 266 Mich App 579, 583; 701 NW2d 214 (2005).

[3] *Id*. at 584 (quotation marks and citation omitted).

[4] *Id*.

[5] *Id*. at 585.

[6] *United Parcel Serv, Inc v Bureau of Safety & Regulation*, 277 Mich App 192, 202; 745 NW2d 125 (2007).

[7] 226 Mich App at 173.

[8] *Id*.

[9] *Id*. at 173-174.

and Health Act (MIOSHA), MCL 408.1001 *et seq*."[10] The Court considered what it meant to be an "employer" and "employee" under the MIOSHA[11]:

> What constitutes an employer and an employee under the MIOSHA is an issue of first impression. Under § 5 of the MIOSHA, " 'Employee' means a person permitted to work by an employer," and " 'Employer' means an individual or organization . . . which employs 1 or more persons." MCL § 408.1005(1), (2); MSA § 17.50(5)(1), (2). Because the definitions of "employer" and "employee" provide little guidance in the determination whether an employment relationship exists, we look to the meaning of the word "employ" in the definition of "employer." The statute does not provide a definition of the word "employ." When, as in this case, a word is not defined in the statute, a court may consult dictionary definitions. *Nat'l Center for Mfg Sciences, Inc v Ann Arbor*, 221 Mich App 541, 546; 563 NW2d 65 (1997). In Black's Law Dictionary (6th ed), "employ" is defined as "to hire." Black's further defines "hire" as "to arrange for the labor or services of another for a stipulated compensation."

> We believe that linking the word "employ" with the payment of compensation to the employee is in accord with the common and approved usage of the word. See *USAA Ins Co v Houston General Ins Co*, 220 Mich App 386, 391; 559 NW2d 98 (1996). Moreover, previously this Court, relying on federal precedent interpreting the Occupational Safety and Health Act to determine that an employer who also worked at the place of employment was an employee under the MIOSHA, noted that " '[c]overage of the employer is also required since . . . *any individual receiving financial return from a business for work performed is an employee*.' " *Barker Bros* [*Constr v Bureau of Safety & Regulation*, 212 Mich App 132,] 139[; 536 NW2d 845 (1995)], quoting *Secretary of Labor v Howard M Clauson, d/b/a Howard M Clauson Plastering Co*, 5 OSHC 1760 (1977) (emphasis added).

> Furthermore, such an interpretation is consistent with the Legislature's purpose in enacting the MIOSHA. The MIOSHA was designed to ensure that employers in business, industry, and government keep their employees' work sites free of recognized hazards. See MCL § 408.1009; MSA § 17.50(9). Nothing in the language of the MIOSHA suggests that it should be applied to homeowners' do-it-yourself projects, nor is it reasonable to expect the average homeowner engaging in such a project to be familiar with and comply with the MIOSHA regulations.

---

[10] *Id*. at 174.

[11] *Hottmann*, 226 Mich App at 178-179.

Importantly, the Court explicitly rejected the assertion that compensation was not a necessary requirement of being an employee:[12]

> Plaintiffs rely on the affidavit of their expert witness, Tony Allam, a regional supervisor for the Department of Labor. *In his affidavit, Allam asserts that under the MIOSHA, there is no requirement that a person be paid wages or receive other compensation in order to be considered an employee. However, the duty to interpret and apply the law has been allocated to the courts*, not to the parties' expert witnesses. See *West Shore Community College v Manistee Co Bd of Comm'rs*, 389 Mich 287, 302; 205 NW2d 441 (1973); *Michigan Residential Care Ass'n v Dep't of Social Services*, 207 Mich App 373, 377; 526 NW2d 9 (1994).

The Court concluded:[13]

> We therefore find that the trial court did not abuse its discretion in ruling that the MIOSHA regulations are inadmissible in any trial of this case. The issue for the trier of fact is whether defendant violated the standard of conduct of a reasonable person, not whether defendant failed to comply with the MIOSHA regulations.

It is not in dispute that Alvin did not receive wages for his work on YFF. Although MIOSHA is now asserting that he received alternate compensation in the form of food, housing, and the like, MIOSHA affirmatively stated below that "there was no compensation." Indeed, it would seem likely that the familial relationship was more likely the source of the receipt of food, housing, and the like, than the labor on the farm. The majority's opinion transforms a familial relationship into a transactional relationship.

The majority endeavors to apply the economic reality test to this case. While citing a number of cases applying the test, none are decided under MIOSHA or similar statutes. We are not being asked whether a trucker[14] or a physician[15] is an employee or an independent contractor. Rather, we are asked whether an adult child still living at home is transformed from a loved son into an employee because the child performs chores on the family farm. I am unwilling to create such a transformation. In any event, the majority's application of the economic reality test still fails for the very argument at issue here: whether there is the payment of wages.[16] I also note with interest that another factor listed is the right to hire and fire. It is unclear to me how someone goes about "firing" a person from being their son.

---

[12] *Id.* at 179-180.

[13] *Id*. at 180 (citation omitted).

[14] *Duckworth v Cherokee Ins Co*, 333 Mich App 202; 963 NW2d 610 (2020).

[15] *Buckley v Prof Plaza Clinic Corp*, 281 Mich App 224; 761 NW2d 284 (2008).

[16] See majority opinion, *ante,* slip op at 7, quoting *Buckley v Prof Plaza Clinic Corp*, 281 Mich App 224, 235; 761 NW2d 284 (2008).

Indeed, does it even matter under the majority's opinion whether the child is a minor or an adult? Taken to its logical conclusion, the majority would require MIOSHA to investigate when a teenager is injured doing chores around the house because the parents are supplying food, clothing, and shelter. And it would not seem to matter even if the teenager is not receiving an allowance in exchange for the chores. Or the situation where a "boomerang" child has returned home after college and, while looking for a job of their own, simply helps out in the family business. Where is the line to be drawn?

YFF represents an institution that used to be commonplace in the United States: the family farm where all pitched in regardless of age and all shared in the fruits of the labor (literally). That institution has, for better or worse, largely given way to the factory farm. Sadly, the effect of the majority's opinion today in applying rules designed to protect the workers in a factory to the family farm will only serve to finish the transformation of family farms into factory farms. The majority accomplishes this by ignoring the economic reality of running a small family farm.

The Yoders simply want to operate their family farm, live together as a family, and practice their faith with as little interference from the outside world as possible. We should honor that desire by recognizing that the law does not give MIOSHA the authority to intrude onto the family farm.[17] Ultimately, this case is about a familial relationship, not a transactional one.

I would affirm.


/s/ David H. Sawyer

---

[17] I do note that an issue not addressed below because of the decisions correctly concluded that YFF was not subject to the act is whether application of the act in this context violates appellee's religious liberty protected under the First Amendment. I trust that these will be addressed on remand.