# STATE OF MICHIGAN

# COURT OF APPEALS

FARM BUREAU GENERAL INSURANCE
COMPANY OF AMERICA,

UNPUBLISHED
May 30, 2017

Plaintiff/Counter-Defendant-
Appellee,

v

No. 330961
Monroe Circuit Court
LC No. 14-137128-CK

WESTFIELD INSURANCE COMPANY,

Defendant/Counter-Plaintiff-
Appellant.

Before: RIORDAN, P.J., and RONAYNE KRAUSE and SWARTZLE, JJ.

PER CURIAM.

Defendant/counter-plaintiff Westfield Insurance Company ("Westfield") appeals as of right the trial court's entry of a judgment in favor of plaintiff/counter-defendant Farm Bureau General Insurance Company of America ("Farm Bureau") in this dispute involving the priority of no-fault insurers. The issues in this appeal relate to the trial court's summary disposition ruling based on its conclusion that Mark LaPointe was an "employee" of Westfield's insured and, therefore, Westfield is a higher priority insurer under MCL 500.3114(3). We reverse and remand for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

On November 24, 2013, LaPointe was transporting a load of grain in a semi-tractor owned by "Larry Benore & Son," an Erie, Michigan farming business. When LaPointe reached a railroad crossing, a train collided with the semi-tractor he was driving. LaPointe was ejected from the vehicle and seriously injured.

At the time, Craig Benore, along with his mother, owned Larry Benore & Son. The company had five other people working for it. Two were full-time, year-round employees. The business withheld taxes from the full-time employees' wages, provided each of them with a W-2 tax form at the end of the year, and provided health coverage to them. A third man performed seasonal planting on the farm. Lastly, LaPointe and another man worked as seasonal truck drivers during the harvest, i.e., between October and the end of December each year. LaPointe and Benore were childhood friends, and LaPointe had worked with Benore on a seasonal basis for several years before the accident. They never had a written agreement concerning their

-1-

working relationship. Benore testified that LaPointe worked less than six hours per day because he had another job.

The semi-tractor that LaPointe was driving at the time of the accident was insured by Westfield under an insurance policy issued to Benore and his mother doing business as Larry Benore & Son. At that time, LaPointe owned personal vehicles that were insured by Farm Bureau.

After the accident, Farm Bureau paid no-fault personal protection insurance ("PIP") benefits to LaPointe. Then, in August 2014, it filed this declaratory action against Westfield, seeking reimbursement for the PIP benefits and a declaratory judgment that Westfield was the higher priority insurer pursuant to MCL 500.3114. Westfield then filed a counterclaim seeking declaratory relief.

Farm Bureau filed a motion for summary disposition pursuant to MCR 2.116(C)(10), asserting that, at the time of the accident, LaPointe was an "employee" of Larry Benore & Son operating a truck owned by that company during the course of his employment. Farm Bureau argued that Westfield, as the insurer of the business vehicle, is responsible for the payment of LaPointe's no-fault benefits under MCL 500.3114(3). In contending that LaPointe was an employee of Larry Benore & Son, Farm Bureau emphasized the four factors of the economic reality test, as delineated in *Parham v Preferred Risk Mut Ins Co*, 124 Mich App 618, 624-625; 335 NW2d 106 (1983). Farm Bureau also asserted that even if LaPointe was an independent contractor, Westfield still was responsible for his no-fault benefits under *Celina Mut Ins Co v Lake States Ins Co*, 452 Mich 84, 89; 549 NW2d 834 (1996).

Westfield filed a combined response and cross-motion for summary disposition under MCR 2.116(I)(2) and MCR 2.116(C)(10), asserting that under the economic reality test, LaPointe was an independent contractor, not an employee. Additionally, as Farm Bureau anticipated in its motion for summary disposition, Westfield asserted that *Adanalic v Harco Nat Ins Co*, 309 Mich App 173, 191; 870 NW2d 731 (2015), the most recent Michigan Court of Appeals case discussing the application of the economic reality test in the context of MCL 500.3114(3), was binding and clearly shows that LaPointe was an independent contractor. Westfield also argued that *Celina Mut Ins Co*, 452 Mich 84, and the other cases cited by Farm Bureau were distinguishable because they involved self-employed persons who were operating a vehicle that they owned at the time of the accident. In its reply, Farm Bureau refuted, *inter alia*, Westfield's application of the economic reality test and reiterated the facts that it found most relevant in applying the test.

In August 2015, after entertaining oral argument, the trial court stated the following ruling on the record:

> Both parties cite Parham for the proposition [sic] the economic reality test. By this test the factors to be considered include control of the worker's duties, payment of wages, right to hire, fire, and discipline [and] the performance of duties as an integral part of the employer's business towards the accomplishment of a common goal. If I apply that test to the case at bar it's clear that LaPointe had no control over his duties. He was to transport the load to the grain elevator.

There isn't any indication anywhere that LaPointe could've said well, I think I'm going to run a harvester or I'm going to, you know, clean the barn or do this or do that. He was hired to do one thing and that was to drive the truck. He could quit, of course, but anybody can quit. The fact that he could drive a different route, meaning I-75 one time and 23 the next time doesn't mean he had control over his duties. He was paid-- the issue of wages, he was paid $12 an hour, which was set by Benore and Sons [sic]. He kept his own hours, turned them in for pay. The argument regarding the friend thing, I think, is ridiculous. If I help my neighbor move, I sure wouldn't send him a bill for $12 an hour after the fact.

Clearly, Benore had the right to hire and fire as indicated in Mr. Benore's deposition testimony and I think the performance of his duties was an integral part. You know, harvest is really a narrow window of opportunity. Things need to be handled within a particular time.

For all those reasons as well as those I cited previously, I find Mr. LaPointe was an employee, a seasonal employee, but he was an employee of Benore and Sons. I don't think I need to address the issue of an independent contractor because he was an employee. As a result, summary disposition is granted in favor of Farm Bureau against Westfield Insurance. [Westfield is] responsible for the PIP benefits due [to] Mr. LaPointe or paid to Mr. LaPointe and is to reimburse Farm Bureau [sic] payment previously made. [Westfield's] motion for summary disposition is denied for the same reasons.

In September 2015, the trial court entered an order for "partial" summary disposition, under which it (1) granted Farm Bureau's motion for summary disposition, (2) denied Westfield's motion for summary disposition, (3) dismissed Westfield's countercomplaint, (4) stated that Westfield is responsible for the payment of LaPointe's PIP benefits, (5) directed Westfield to reimburse Farm Bureau for all of the benefits that it had provided to LaPointe, with the amount due to be determined by agreement of the parties or further order, and (6) ordered that Westfield was responsible for all future PIP benefits due to LaPointe. In December 2015, the trial court entered a final judgment in favor of Farm Bureau.

Westfield now appeals as of right.

## II. STANDARD OF REVIEW

We review *de novo* a trial court's grant or denial of summary disposition, *Moraccini v Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012), as well as issues of statutory interpretation, *Grange Ins Co v Lawrence*, 494 Mich 475, 490; 835 NW2d 363 (2013).

"A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Cannon Twp v Rockford Pub Sch*, 311 Mich App 403, 411; 875 NW2d 242 (2015). When reviewing such a motion, this Court only may consider, in the light most favorable to the party opposing the motion, the evidence that was before the trial court, which consists of "the 'affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties[.]" *Calhoun Co v Blue Cross Blue Shield*

-3-

*Michigan*, 297 Mich App 1, 11; 824 NW2d 202 (2012), quoting MCR 2.116(G)(5). Under MCR 2.116(C)(10), "[s]ummary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

We note that the parties in this case do not suggest that a finder of fact must determine whether LaPointe was an "employee" for purposes of MCL 500.3114(3). Rather, they agree that there is no genuine issue of any material fact, such that summary disposition is proper as a matter of law.

## III. APPLICATION OF THE ECONOMIC REALITY TEST

Westfield contends that the trial court improperly granted summary disposition in favor of Farm Bureau based on its finding that LaPointe was an "employee" of Westfield's insured, Larry Benore & Son. Therefore, Westfield argues that the trial court erroneously ruled that it is the higher priority insurer under MCL 500.3114(3) and is liable for LaPointe's no-fault insurance benefits. We agree with Westfield that the trial court improperly granted summary disposition in favor of Farm Bureau. We find that under the economic reality test, which dictates whether MCL 500.3114(3) is triggered, LaPointe was not an "employee" of Larry Benore & Son.

Pursuant to MCL 500.3114(1), "the general rule is that one looks to a person's own insurer for no-fault benefits unless one of the statutory exceptions, subsections 2, 3, and 5, applies." *Frierson v West American Ins Co*, 261 Mich App 732, 735; 683 NW2d 695 (2004); see also *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 262; 819 NW2d 68 (2012). The parties agree that Farm Bureau is responsible for the payment of LaPointe's PIP benefits unless MCL 500.3114(3) applies. MCL 500.3114(3) provides:

> An employee, his or her spouse, or a relative of either domiciled in the same household, who suffers accidental bodily injury while an occupant of a motor vehicle owned or registered by the employer, shall receive personal protection insurance benefits to which the employee is entitled from the insurer of the furnished vehicle.

Thus, if LaPointe qualifies as an "employee," then Farm Bureau, as "the insurer of the furnished vehicle," is higher in priority than Westfield.

Although "employee" is not defined under the statute, we have recognized that "[a]n independent contractor is not considered an 'employee' for purposes of the no-fault act." *Adanalic*, 309 Mich App at 191. "An independent contractor is defined as one who, carrying on an independent business, contracts to do work without being subject to the right of control by the employer as to the method of work but only as to the result to be accomplished." *Candelaria v BC Gen Contractors, Inc*, 236 Mich App 67, 73; 600 NW2d 348 (1999) (quotation marks and citation omitted).

As the parties agree, "[f]or purposes of MCL 500.3114(3), whether an injured party was an 'employee' is determined by applying the 'economic reality test.' " *Adanalic*, 309 Mich App at 190-191, citing *Parham*, 124 Mich App at 624-625; see also *Citizens Ins Co of Am v Auto Club Ins Ass'n*, 179 Mich App 461, 464-465; 446 NW2d 482 (1989). The following factors are considered under the test: " '(a) control of the worker's duties, (b) payment of wages, (c) right to hire, fire and discipline, and (d) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal.' " *Adanalic*, 309 Mich App at 191, quoting *Parham*, 124 Mich App at 623. "Th[e] test takes into account the totality of the circumstances around the work performed . . . ." *Buckley v Prof Plaza Clinic Corp*, 281 Mich App 224, 234; 761 NW2d 284 (2008). The four factors of the economic reality test are nonexclusive,[1] and no factor is dispositive. *Id*. at 235. "However, [w]eight should be given to those factors that most favorably effectuate the objectives of the statute in question." *Id*. at 235 (quotation marks and citation omitted).

We have recognized that the purpose of the employer-employee exception, MCL 500.3114(3), to the general priority statute of MCL 500.3114(1) is to provide predictability in commercial settings by imposing liability on an employer's insurer rather than the insurer of the injured individual. *Besic v Citizens Ins Co of the Midwest*, 290 Mich App 19, 31-32; 800 NW2d 93 (2010). Additionally, the Michigan Supreme Court has recognized that the cases interpreting MCL 500.3114(3) "have given it a broad reading designed to allocate the cost of injuries resulting from use of business vehicles to the business involved through the premiums it pays for insurance." *Celina Mut Ins Co*, 452 Mich at 89. However, again, one must qualify as an "employee" in order for the employer's insurer to be liable for the employee's PIP benefits under MCL 500.3114(3); the insurer of a business vehicle is not automatically held liable without such a showing. *Adanalic*, 309 Mich App at 190.

The trial court erred in concluding that LaPointe qualified as an "employee" of Larry Benore & Son for purposes of MCL 500.3114(3). An examination of all the evidence in the record in conjunction with the factors of the economic reality test reveals that reasonable minds could not differ with regard to this issue. All of the factors weighed in favor of a finding that LaPointe was, at most, an independent contractor, not an employee.

First, contrary to the trial court's ruling, the record shows that Benore exerted little control over LaPointe's duties. The testimony indicates that Benore did little to monitor or supervise LaPointe as he transported the crops. Rather, Benore would give LaPointe a task or load to complete, and LaPointe would perform it without any significant instruction or oversight. Although Benore determined the grain elevator to which LaPointe would make deliveries,

---

[1] Additional factors may be considered as necessary. *Meridian Mut Ins Co v Wypij*, 226 Mich App 276, 281-282; 573 NW2d 320 (1997). Other relevant factors may include (1) whether the individual furnishes his own equipment, (2) whether the individual holds himself out to the public for hire, and (3) whether independent contractors customarily perform the undertaking. See *Coblentz v City of Novi*, 475 Mich 558, 578-579; 719 NW2d 73 (2006); *Meridian Mut Ins Co*, 226 Mich App at 281-282; *McKissic v Bodine*, 42 Mich App 203, 208-209; 201 NW2d 333 (1972).

Benore did not control the route that LaPointe took to reach the elevator.[2]  Moreover, contrary to the trial court's findings, the record shows that LaPointe did more than just drive the trucks. Although driving was his primary task, LaPointe also would perform other tasks on occasion— often on his own initiative—in order to assist with whatever jobs Benore needed accomplished.

The first factor also requires an analysis of whether LaPointe had the right to refuse to haul a load and whether there was an agreement that LaPointe only could drive or haul loads for Larry Benore & Son.  See *Adanalic*, 309 Mich App at 193.  Benore and LaPointe both testified that LaPointe was free to turn down an opportunity to haul a load for any reason.  Notably, Benore testified, "If he had something else to do or didn't want to do it, you know, he wasn't forced."  Benore did not control the hours that LaPointe worked, or even whether LaPointe worked.  Sometimes, such as on the day of the accident, LaPointe contacted Benore to suggest that they work together.  On other occasions, LaPointe would come to work at Benore's farm after he had finished working at his other job and had eaten dinner.  The informality of Benore and LaPointe's working relationship—which both of them characterized as a friend helping a friend[3]—particularly reveals Benore's lack of control over LaPointe's time and work.[4]  LaPointe and Benore also did not have an agreement that LaPointe would haul loads only for Benore.  To the contrary, Benore was well aware that LaPointe had a full-time job as a semi-truck driver for Three-Way Trucking, Inc., and it was understood that LaPointe's availability to work for Benore was limited by LaPointe's obligations to his full-time employer.[5]  Although the record shows that LaPointe was not expected to bring his own tools, that Benore provided the truck LaPointe

---

[2] Significantly, LaPointe testified that Benore "just assumed that I knew the best way to take to get there . . . or the shortest, fastest possible way, and that's the way I took."

[3] Benore and LaPointe both characterized LaPointe's employment status with Larry Benore & Son as "part-time, "seasonable help."  Benore also stated, "You know, like I said, he was my – he's my friend.  I mean, if he was doing something and I seen [sic] he could use a hand, I'd go over and help him."  Benore also explained that they would routinely loan each other equipment, supplies, and "hired hands."  Similarly, LaPointe testified that he did not see himself as either an employee or an independent contractor.  Rather, he confirmed that he merely considered himself a friend who was helping Benore.

[4] The record is replete with examples of the informality of LaPointe and Benore's working relationship.  For example, in response to a question concerning how LaPointe would know when to work, Benore explained, "That morning [of the accident] he called me; says, 'It's supposed to freeze.  Let's get this corn before it – while we can get it out of the field.'  And he says, 'I'm not going [sic] nothing.'  And I said, 'Well, if you're not doing nothing, let's go do it.' "  Similarly, Benore later confirmed that he would sometimes call LaPointe if  the work was getting behind, or, alternatively, "[H]e'd call me, because we're neighbors.  He'll say, you know, 'Do you need any help?'  You know, 'I'm not doing nothing.'  Or 'I'm not – I'm off today' or – you know."

[5] Notably, Benore testified that, due to the higher workload at LaPointe's full-time job in 2013, LaPointe "only had [worked approximately] 60 hours . . . for the year" before the date of the accident.

would drive, and that Benore paid for the gas, these facts do not undermine the overwhelming evidence showing Benore's lack of control over LaPointe.

Under the second factor, the trial court correctly noted that Larry Benore & Son paid LaPointe $12 an hour for his work. However, the company also paid LaPointe an additional amount during the 2013 harvest when the accident occurred, in the same check, "just to help him out." Additionally, both men testified that sometimes LaPointe would perform work for Benore "on trade" or based on an informal "barter system," meaning, for example, that LaPointe would work some hours in exchange for the opportunity to borrow Benore's planter.[6] Further, LaPointe tracked his own time, and he was not required to report his hours at a particular time or in a particular manner.[7] This factor requires consideration of whether the purported employer withheld income taxes or issued a 1099 form, see *Adanalic*, 309 Mich App at 193, and Benore did not withhold taxes from LaPointe's wages or provide health benefits. Benore did both for his full-time employees. He also did not provide LaPointe with either a 1099 or a W-2 tax form.

The third factor concerns Benore's right to hire, fire, and discipline LaPointe, including whether the relationship was terminable at will by either party. See *Adanalic*, 309 Mich App at 194. The record confirms that Benore had no ongoing obligation to use LaPointe for his transportation needs, and that LaPointe had no ongoing obligation to drive trucks for Benore. Although Benore testified that he could tell LaPointe not to "come around" anymore if LaPointe did something objectionable, this fact simply appears consistent with the fact that their working relationship was terminable at will by either party; it does not appear to show that Benore had the right to "discipline" LaPointe. Similarly, there is no indication that LaPointe and Benore adhered to anything analogous to a set of disciplinary procedures or customs that would commonly govern an employer-employee relationship. There also is no indication that Benore could "fire" or "terminate" LaPointe. Rather, based on deposition testimony, it was implicitly understood that Benore could simply stop inviting LaPointe to work, or LaPointe could stop soliciting work.

The fourth factor is whether LaPointe was responsible for the performance of duties that were an integral part of Larry Benore & Son's business efforts toward the accomplishment of a common goal. This includes a consideration of (1) whether the services being provided were available by another means, such as by other drivers, (2) whether the relationship was terminable at any time, and (3) whether the individual could refuse to haul a load. See *Adanalic*, 309 Mich App at 194. The transportation of crops was an integral part of the business, but this transportation was provided primarily by Benore and another worker. Benore testified that he

---

[6] However, LaPointe confirmed that they were not operating under the barter system when Benore paid him for his work.

[7] Benore testified that LaPointe would simply "[t]urn in his hours at the end of the year" on a piece of paper, or LaPointe would verbally relay his hours to Benore, and Benore would "write i[t] down on a napkin or something." Similarly, LaPointe testified that he would write down the days and hours worked on a piece of paper, but he believed that he would turn in the paper weekly or "let it go two weeks and then hand it to [Benore]."

only needed additional driving assistance if the farming business "g[ot] behind." He further explained, "[F]or the majority of it, it's usually me or [or the other driver] trucking. [LaPointe] is – like, out of 200 and some loads, maybe hauls 10 or 12," *i.e.*, 6% or less of the total workload. Further, as previously stated, LaPointe could refuse to transport a load, and either party could discontinue the relationship. The record shows, as previously stated, that Benore was aware that LaPointe had a full-time job that took priority over any work that Benore had for LaPointe. If LaPointe refused a load, Benore would either ask another employee to perform the task or he would perform it himself. Notably, Benore expressly recognized that LaPointe worked fewer days for him in 2013 than 2012 because LaPointe had less free time due to the fact that he was working more hours through his full-time job with Three-Way Trucking, Inc. Although we agree that the transportation of crops was an integral part of Benore's business, deposition testimony clearly shows that *LaPointe's* performance of the duties assigned to him was not an integral part of Benore's business. To the contrary, LaPointe's contribution to the company was sporadic and fungible. Benore simply did not rely upon LaPointe as an "employee" of the company.

The application of the economic reality test shows that LaPointe was, at most, an independent contractor, not an "employee." See *Adanalic*, 309 Mich App at 191. Accordingly, the trial court erred when it concluded that LaPointe was an "employee" of Larry Benore & Son for purposes of the no-fault act, such that Westfield is responsible for the payment of LaPointe's no-fault PIP benefits.

## IV. LIABILITY AS THE INSURER OF A COMMERCIAL VEHICLE

Westfield contends that we should reject Farm Bureau's argument in the trial court that Westfield is higher in priority for the payment of LaPointe's no fault-PIP benefits solely because it insured the commercial vehicle involved in the accident. Consistent with its argument below, Farm Bureau argues that even if LaPointe was an independent contractor and not an employee, Westfield is still "obligated to pay PIP benefits because Mr. LaPointe was operating a business truck insured by Westfield." We agree with Westfield and not Farm Bureau. Although the trial court did not decide this issue, we will briefly address this question[8] in order to clarify why Farm Bureau's line of reasoning cannot serve as an alternative basis for affirming the trial court's grant of summary disposition in its favor. See *Gleason v Michigan Dep't of Transp*, 256 Mich App 1,

---

[8] As we recently explained in *Dell v Citizens Ins Co of America*, 312 Mich App 734, 758; 880 NW2d 280 (2015):

> Generally, an issue must be raised, addressed, and decided in the trial court to be preserved for review. *Mouzon v Achievable Visions*, 308 Mich App 415, 419; 864 NW2d 606 (2014). But [a party] "should not be punished for the omission of the trial court." *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994). This Court may address [an] issue [where] it concerns a legal question and all of the facts necessary for its resolution are present. *Rooyakker & Sitz, PLLC v Plante & Moran, PLLC*, 276 Mich App 146, 157 n 6; 742 NW2d 409 (2007).

3; 662 NW2d 822 (2003) ("A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason.").

Specifically, Farm Bureau argues that, under *Celina Mut Ins Co*, 452 Mich at 89, and *Besic*, 290 Mich App at 30-32, the insurer of a commercial vehicle used by a self-employed person is responsible for the payment of that person's no-fault PIP benefits. Likewise, it contends that independent contractors are inherently self-employed, as they constitute "persons operating their own business and providing services to another." For these reasons, Farm Bureau concludes that it is not responsible for the payment of LaPointe's PIP benefits.

*Celina* and *Besic* are not relevant here. An inextricable component of the conclusion and reasoning in *Celina* is that a self-employed person operating a motor vehicle *owned by that self-employed person* in the course of his or her self-employment is both an employee and employer for purposes of MCL 500.3114(3). The vehicle that LaPointe was occupying was a vehicle was owned by Larry Benore & Son, not by LaPointe or a business that he owned. Neither *Celina* nor *Besic* support the broad conclusion that the insurer of a commercial vehicle is responsible for the payment of no-fault PIP benefits under MCL 500.3114(3) when the injured self-proprietor was not the owner of the vehicle.

## V. CONCLUSION

The trial court's grant of summary disposition in favor of Farm Bureau was improper. Westfield is correct that under the economic reality test, LaPointe was not an "employee" of Westfield's insured. As a result, Farm Bureau was higher in priority. Further, *Celina* and its progeny do not indicate that Westfield is responsible for no-fault benefits under MCL 500.3114(3) merely because it insured the commercial vehicle. Thus, we reverse the trial court's grant of summary disposition in favor of Farm Bureau, and remand for entry of an order granting summary disposition in favor of Westfield as well as further proceedings consistent with this opinion.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Amy Ronayne Krause
/s/ Brock A. Swartzle

-9-