*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SYRJA LEKLI,

        Plaintiff-Appellant,

v

FARM BUREAU MUTUAL INSURANCE
COMPANY OF MICHIGAN, FARM BUREAU
GENERAL INSURANCE COMPANY, GREAT
AMERICAN INSURANCE COMPANY,
PERGJONI TRANSPORT, LLC, MICHIGAN
AUTOMOBILE INSURANCE PLACEMENT
FACILITY,

        Defendants-Appellees,

and

B&W CARTAGE COMPANY, INC.,

        Defendant.

UNPUBLISHED
May 20, 2021

No. 350942
Macomb Circuit Court
LC No. 2017-004762-NF

Before: K. F. KELLY, P.J., and SERVITTO and LETICA, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's final order dismissing defendant Pergjoni Transport, LLC, (Pergjoni Transport), from the case. However, this appeal challenges the trial court's underlying orders granting summary disposition in favor of defendants Great American Assurance Company,[1] Farm Bureau Mutual Insurance Company of Michigan, Farm Bureau

---

[1] Great American's name was incorrectly captioned in plaintiff's complaint as Great American *Insurance* Company and remained that way in all the subsequent captions.

General Insurance Company of Michigan,[2] B&W Cartage Company, Inc., (B&W), and the Michigan Automobile Insurance Placement Facility (MAIPF). Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In July 2015, B&W and Pergjoni Transport entered into an operating agreement. In that agreement, Pergjoni Transport, owner of a Peterbilt truck, leased the truck to B&W. Pergjoni Transport also agreed to supply transportation services to B&W. The agreement specified that Pergjoni Transport is an independent contractor of B&W. Under the terms of the agreement, Pergjoni Transport was required to maintain insurance on the truck, which it did. Pergjoni Transport had two policies for the truck that were in effect on the date of plaintiff's accident, December 11, 2016. One policy was issued by Great American, and the other was issued by nonparty Hudson Insurance Company.

In January 2016, plaintiff filled out an application to B&W to be a driver for Pergjoni Transport. Plaintiff got the job and signed forms acknowledging that he was an independent contractor with respect to B&W. Plaintiff started working in February 2016. Plaintiff's routine was to drive his own vehicle to where the Peterbilt truck was parked in Taylor, Michigan, and then drive that truck to Saline, Michigan, where he would generally pick up a trailer full of auto parts. Plaintiff would then drive the fully loaded truck to a plant in Missouri. Afterward, plaintiff would take an empty trailer back to Saline and then would park the truck in Taylor until the next trip. Plaintiff kept the keys to the truck, even while it remained parked in Taylor. Plaintiff testified that he generally drove this route two times a week and was paid $550 for each trip, or $1,100 for a week. Plaintiff was paid directly by Alfred Pergjoni,[3] and plaintiff was issued an IRS 1099-MISC form at the end of the year. Plaintiff referred to Mr. Pergjoni as his "boss" or "supervisor" several times during his deposition, and referred to Pergjoni Transport as his "employer."

On December 11, 2016, while driving the truck after picking up a trailer from the Saline plant, plaintiff was involved in an accident. He suffered injuries as a result of the accident and had three different surgeries. In December 2017, plaintiff applied for personal protection insurance (PIP) benefits to the MAIPF, alleging that the claim was being made because of a dispute between Farm Bureau, which insured plaintiff's personal vehicles, and Great American, which insured the Peterbilt truck. A week later, plaintiff filed the instant suit.

The Michigan Assigned Claims Plan (MACP), as maintained by MAIPF, denied plaintiff's claim. In a denial letter dated January 18, 2018, the MACP stated that "[t]here was higher identifiable coverage at the time of the accident." The MACP issued a second denial letter, dated January 22, 2018, in which the MACP stated that it could not process plaintiff's claim without additional information. The letter indicated that because plaintiff had indicated there was a dispute

---

[2] Our use of "Farm Bureau" in this opinion refers to the two Farm Bureau defendants, collectively.

[3] To avoid confusion between Alfred Pergjoni and Pergjoni Transport, we will refer to Alfred Pergjoni as Mr. Pergjoni.

between two carriers, he needed to send proof of that dispute. Additionally, the letter stated that once the complete information was received, the claim would be reviewed. Plaintiff concedes that the lower court record does not show that he supplied any of the requested information.

Thereafter, many of the defendants filed motions for summary disposition. Great American alleged that its policy specifically excluded coverage when the truck was being used in the business of a lessee or when being used to transport cargo. In response, without addressing the substance of Great American's argument or the underlying policy and without citing any law, plaintiff merely asserted that both Farm Bureau and Great American were responsible for PIP benefits.

The MAIPF submitted that, despite plaintiff's representations in his complaint of a lack of insurance coverage, the evidence showed that plaintiff did have personal no-fault coverage through Farm Bureau and that the truck he was driving was insured by both Great American and nonparty Hudson. The MAIPF concluded that because it was the insurer of last resort and applicable identifiable coverage existed, plaintiff was not eligible to seek benefits through the MAIPF. Plaintiff asserted that because none of the other insurers had acknowledged an obligation to pay PIP benefits, there was a priority dispute, which required the MAIPF to assign the claim. Plaintiff further stated, "[T]he MAIPF is not entitled to summary disposition until such time as there is a higher insurer established either through litigation or acknowledgment of coverage and priority."[4]

Farm Bureau contended that it was entitled to summary disposition because, although an insured generally sought the payment of no-fault benefits from his own insurance policy, MCL 500.3114(3) provides an employment exception. Specifically, an employee injured on the job while an occupant of a vehicle owned by the employer is to receive benefits from the insurer of the furnished vehicle. Farm Bureau maintained that at the time of the accident, plaintiff, under the economic-reality test, was an employee of Pergjoni Transport and B&W, which meant that the no-fault benefits were owed by either Great American or Hudson. Plaintiff submitted, in pertinent part, that MCL 500.3114(3) was inapplicable because under the economic-reality test, he was not an "employee" and instead was an independent contractor.

In an opinion and order, the trial court granted Great American's motion for summary disposition. The trial court noted that the Great American policy had an exclusion for bodily injury arising out of any accident occurring while the vehicle was being used in the business of any lessee or while being used to transport cargo.[5] But the court addressed the significance of the policy's endorsement because, although a general policy may exclude certain coverage, an endorsement can extend coverage. The trial court found no conflict between the endorsement and the general policy and concluded that the exclusion in the policy remained valid. Accordingly, because there

---

[4] Similarly, later in his brief, plaintiff stated, "Until such time as there has been a determination of coverage and priority by the other insurers involved, the MAIPF cannot be dismissed from this action."

[5] This type of coverage—only covering the truck when there is no trailer or where there is an empty trailer—is typically called a "bobtail" policy in the industry.

was no question of fact that plaintiff was operating the truck for business and was hauling cargo at the time of the accident, the court granted Great American's motion for summary disposition.

In a second opinion and order, the trial court granted the MAIPF's and Farm Bureau's motions for summary disposition.[6] The trial court ruled that because, under the economic-reality test, plaintiff was an "employee" of Pergjoni Transport, the insurers of the truck, pursuant to MCL 500.3114(3), were higher priority insurers than Farm Bureau. However, because Great American's policy did not provide coverage in this instance, Hudson was the insurer with the highest priority. The trial court then granted the MAIPF's motion for summary disposition because once the court determined that Hudson had the highest priority, there was no longer any dispute amongst insurers. After the trial court denied plaintiff's motions for reconsideration, this appeal followed.

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *MemberSelect Ins Co v Flesher*, 332 Mich App 216, 221; 956 NW2d 535 (2020). Summary disposition is appropriate pursuant to MCR 2.116(C)(10) where there is "no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When reviewing a motion for summary disposition challenged under MCR 2.116(C)(10), the court considers the affidavits, pleadings, depositions, admissions, and other admissible documentary evidence then filed in the action or submitted by the parties. MCR 2.116(G)(4), (G)(5); *Puetz v Spectrum Health Hosps*, 324 Mich App 51, 68; 919 NW2d 439 (2018). To succeed on a motion for summary disposition, the moving party must make and support the motion with admissible documentary evidence. *McCoig Materials LLC v Galui Constr Inc*, 295 Mich App 684, 694; 818 NW2d 410 (2012). After the moving party makes and supports the motion, the burden shifts to the nonmoving to demonstrate a genuine issue of material fact. *Id*. Additionally, the interpretation and construction of an insurance contract is a question of law that this Court reviews de novo. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999).

## III. THE MAIPF'S MOTION FOR SUMMARY DISPOSITION

Plaintiff contends that the trial court erred when it granted the MAIPF's motion for summary disposition. However, we hold that plaintiff is not entitled to any relief because he took the position in the trial court that once the priority dispute was resolved, the MAIPF could be dismissed.

When moving for summary disposition, the MAIPF alleged that plaintiff was not eligible for benefits through the MAIPF because

---

[6] The opinion and order also granted B&W's motion for summary disposition, but that decision is not before us on appeal.

there is applicable and identifiable coverage for this loss with Great American, B & W (Hudson), and Farm Bureau. As a result, Plaintiff does not meet any of the four (4) circumstances wherein a claim can be made with the [MACP], as maintained by the MAIPF.[7]

On appeal, plaintiff submits that "[t]he MAIPF was not entitled to summary disposition . . . simply because it could, at the conclusion of this litigation, locate an insurer with the highest priority or on the basis that all priority disputes had been resolved."

However, plaintiff's position in the trial court is contrary to his position on appeal. In his response to the MAIPF's motion for summary disposition, plaintiff stated, "[T]he MAIPF is not entitled to summary disposition until such time as there is a higher insurer established either through litigation or acknowledgment of coverage and priority," and "Until such time as there has been a determination of coverage and priority by the other insurers involved, the MAIPF cannot be dismissed from this action." Therefore, although plaintiff in that same brief argued that it was improper to grant the MAIPF's motion for summary disposition because it had a statutory obligation to assign the claim, plaintiff nonetheless conceded that the MAIPF could be dismissed, i.e., summary disposition granted, once the priority dispute was resolved.[8] Notably, in its opinion and order denying plaintiff's motion for reconsideration, the trial court acknowledged, "Plaintiff claims that MAIPF should not be entitled to summary disposition until such time as there is a high insurer established through either litigation or acknowledgment of coverage or priority."

Hence, plaintiff's position on appeal—that regardless of the eventual priority determination, summary disposition was not warranted—is contrary to his position in the trial court. "A party may not take a position in the trial court and subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial court." *Living Alternatives for the Developmentally Disabled, Inc v Dep't of Mental Health*, 207 Mich App 482, 484; 525 NW2d 466 (1994). Consequently, because plaintiff took the position that summary disposition *could* be granted in favor of the MAIPF once the priority dispute was resolved, he cannot now complain after the trial court dismissed the MAIPF after resolving the priority dispute. Therefore, we decline to address the underlying merits of plaintiff's claim on appeal, and instead hold that plaintiff has waived the issue because he expressly agreed that once the priority dispute was resolved, it would then be proper to dismiss the MAIPF from the case. Indeed, this is exactly what the trial court did after it determined that Hudson was the highest priority insurer.

Plaintiff also asks this Court to remand this case to the trial court with instructions to impose sanctions against the MAIPF for the purported frivolous defenses and legal arguments it raised in the trial court. We decline this invitation because plaintiff never moved for sanctions in the trial court. See MCL 600.2591(1). Furthermore, this Court is an error-correcting court. *Apex*

---

[7] The MAIPF clarified at the motion hearing that the purported "applicable and identifiable coverage" was with Great American and Farm Bureau.

[8] In his motion for reconsideration, plaintiff repeated that the MAIPF was not entitled to summary disposition "until such time as there is a higher insurer established" and "[u]ntil such time as there has been a determination of coverage and priority."

*Laboratories Int'l Inc v Detroit*, 331 Mich App 1, 10; 951 NW2d 45 (2020). With no request having been made to the trial court, there is no "issue" or error that plaintiff has identified for this Court to review.

## III. FARM BUREAU'S MOTION FOR SUMMARY DISPOSITION

Plaintiff alleges that the trial court erred when it determined that he was an employee of Pergjoni Transport and granted Farm Bureau's motion for summary disposition. We disagree.

The general rule is that a person claiming PIP benefits is to obtain them from his or her own insurer. MCL 500.3114(1). However, among the exceptions to this general rule is MCL 500.3114(3), which states:

> An employee . . . who suffers accidental bodily injury while an occupant of a motor vehicle owned or registered by the employer, shall receive personal protection insurance benefits to which the employee is entitled from the insurer of the furnished vehicle.

Because Farm Bureau insured plaintiff's personal vehicles, normally it would be the insurer that plaintiff would pursue for PIP benefits. But in moving for summary disposition, Farm Bureau claimed that plaintiff had to seek benefits from the insurer of the truck, Hudson, because plaintiff was an employee of Pergjoni Transport at the time of the accident. The trial court agreed, specifically ruling that there was no question of fact that, while Pergjoni Transport was an independent contractor to B&W, plaintiff was an employee of Pergjoni Transport. The court consequently determined that Pergjoni Transport's insurer, Hudson, had the highest priority and granted Farm Bureau's motion for summary disposition.

> For purposes of MCL 500.3114(3), whether an injured party was an "employee" is determined by applying the "economic reality test." By this test, factors to be considered include: (a) control of the worker's duties, (b) payment of wages, (c) right to hire, fire and discipline, and (d) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal. An independent contractor is not considered an "employee" for purposes of the no-fault act. [*Adanalic v Harco Nat'l Ins Co*, 309 Mich App 173, 190-191; 870 NW2d 731 (2015) (citations and some quotation marks omitted).]

"These factors are viewed together in their entirety under a totality of the circumstances test." *Kidder v Miller-Davis Co*, 455 Mich 25, 42; 564 NW2d 872 (1997). Under this test, no single factor is dispositive. *Buckley v Prof Plaza Clinic Corp*, 281 Mich App 224, 235; 761 NW2d 284 (2008).

The first factor, control of the worker's duties, weighs in favor of an employer-employee relationship between Pergjoni Transport and plaintiff. Plaintiff testified that Pergjoni Transport, through Mr. Pergjoni, exhibited a high amount of control over plaintiff's duties. Plaintiff referred to Mr. Pergjoni as his "boss" or "supervisor" several times during his deposition and referred to Pergjoni Transport as his "employer." Mr. Pergjoni provided plaintiff with a schedule, in which he had to be in Saline by 12:00 every Monday. Plaintiff also had to get the truck's oil changed whenever Mr. Pergjoni told him to do so and at a location that Mr. Pergjoni specified. When

plaintiff would get the truck serviced, it would be paid with Mr. Pergjoni's credit card. Mr. Pergjoni also provided plaintiff with a Love's[9] credit card, issued in plaintiff's name, for refueling the truck. Plaintiff also had no control over what he transported; he never knew what parts he was transporting to Missouri. Plaintiff testified, however, that he could select which particular route to drive to get to his destination. In sum, these facts overall demonstrate the high amount of control Pergjoni Transport exerted over plaintiff, thereby favoring an employee-employer relationship.

The second factor involves the payment of wages. In this instance, Pergjoni Transport paid plaintiff $550 for every round-trip plaintiff made from Michigan to Missouri, which equated to $1,100 for two trips each week. Notably, there were no other fringe benefits, and at the end of the year, plaintiff was issued a 1099-MISC form instead of a W-2 form. This factor is a close call. On the one hand, the manner of payment was consistent with an independent-contractor relationship, but the economic reality was that Pergjoni Transport—and not someone else—paid plaintiff's wages. See *Kidder*, 455 Mich at 44. Not only did Pergjoni Transport pay plaintiff's wages, those wages were the entirety of plaintiff's income. Accordingly, but for the fact that the income was reported on a 1099 form instead of a W-2 form, this factor clearly would favor a finding of an employer-employee relationship.

The third factor speaks to the right to hire, fire, and discipline the worker. The evidence presented was scant on this factor. Although it was undisputed that Mr. Pergjoni hired plaintiff, there was no express evidence addressing the ability to fire and discipline plaintiff. As the one who hired plaintiff, it naturally follows that Pergjoni Transport also could terminate the relationship. Indeed, because there was no contract between the parties indicating otherwise, Pergjoni Transport necessarily maintained the ability to terminate the relationship. Cf. *Prysak v RL Polk Co*, 193 Mich App 1, 9; 483 NW2d 629 (1992) ("Generally, at-will employment may be terminated at any time, for any reason."). Also, it is notable that Pergjoni Transport at one point provided plaintiff with a $50 bonus after plaintiff was pulled over by the police and the ensuing inspection went well. The fact that Pergjoni Transport had the ability to reward plaintiff also tends to show that it had the ability to sanction him as well. As such, this factor weighs in favor of an employee-employer relationship.

Finally, the fourth factor is whether plaintiff was responsible for the performance of duties that were an integral part of Pergjoni Transport's business efforts toward the accomplishment of a common goal. The trial court determined that plaintiff was an integral part of Pergjoni Transport's business because Pergjoni Transport had only three trucks. Indeed, plaintiff was the only driver assigned to one particular truck, and the only driver with a key to his assigned truck. Plaintiff does not take issue with the facts as described by the trial court. Instead, plaintiff avers that the court "needed to know more about that business" before rendering a ruling. We disagree. If more evidence was "needed," it was incumbent on plaintiff to present it to create a question of fact. See *Quinto v Cross & Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996) ("If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion [for summary disposition] is properly granted."). Moreover, plaintiff's comments seem to relate to a lack of evidence pertaining to B&W's business, as opposed to Pergjoni Transport's

---

[9] Love's is a company providing truck-stop services nationwide.

business. How many trucks B&W leased or whether it did business with other companies is not relevant for determining whether plaintiff was an employee of Pergjoni Transport. As the trial court noted, plaintiff was responsible for one-third of Pergjoni Transport's trucking business, which is a substantial amount. The fact that plaintiff kept the keys to the truck at all times, even when the truck was parked in Taylor, further shows that he was a vital part of Pergjoni Transport's business. Accordingly, the trial court did not err in its analysis of this factor.

In sum, every factor, except for the fact that plaintiff received 1099 forms instead of W-2 forms, supports the existence of an employee-employer relationship between plaintiff and Pergjoni Transport. Again, no single factor is dispositive, and the evaluation is premised on the totality of the circumstances. *Kidder*, 455 Mich at 42. In our view, no reasonable minds could come to a different conclusion after considering the entirety of the circumstances. Therefore, the trial court properly ruled that plaintiff was an employee of Pergjoni Transport at the time of the accident, and accordingly, properly granted Farm Bureau's motion for summary disposition. See *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). With plaintiff being an employee of Pergjoni Transport and him being injured in a company vehicle, Pergjoni Transport's insurer, Hudson, would be highest in priority for the recovery of PIP benefits. See MCL 500.3114(3).[10]

## IV. GREAT AMERICAN'S MOTION FOR SUMMARY DISPOSITION

Plaintiff alleges that the trial court erred by granting Great American's motion for summary disposition.[11] We disagree.

This issue involves the proper interpretation of an insurance policy. "Because a no-fault insurance policy is a contract, the general rules of contract interpretation apply." *Fuller v GEICO Indemnity Co*, 309 Mich App 495, 498; 872 NW2d 504 (2015). The terms of an insurance policy are to be enforced if they are "clear, unambiguous, and not in contravention of public policy." *MEEMIC Ins Co v Fortson*, 506 Mich 287, 297; 954 NW2d 115 (2020) (quotation marks and citation omitted). Consequently, a court cannot hold an insurance company liable for a risk that it did not assume. *Henderson*, 460 Mich at 354.

In Part II of the Coverage Form of the Great American policy, titled "LIABILITY COVERAGE FOR NON-TRUCKING USE," it states, in pertinent part:

---

[10] Plaintiff's reliance on two acknowledgments that he signed and a separate independent-contractor agreement is misplaced. The independent-contractor agreement was an agreement between B&W and Pergjoni Transport; thus, it does not address plaintiff's relationship with Pergjoni Transport. Likewise, the two signed acknowledgments were plaintiff acknowledging his independent status with respect to B&W, not Pergjoni Transport.

[11] Although Great American alleged that its policy did not cover any PIP benefits because of an exclusion, plaintiff did not address the merits of the issue in writing or at oral argument. Nonetheless, because the issue presents a question of law for which necessary facts are presented, we address it. See *Autodie, LLC v City of Grand Rapids*, 305 Mich App 423, 431; 852 NW2d 650 (2014).

C. EXCLUSIONS

This insurance does not apply to any of the following:

\* \* \*

13. TRUCKING OR BUSINESS USE

Bodily injury or property damage arising out of any accident which occurs while the covered auto is being used in the business of any lessee or while the covered auto is being used to transport cargo of any type. [Bold type omitted.]

In Part III of the policy, it also provides that the exclusions listed under Part II are to apply for PIP coverage as well. Thus, the above language plainly excludes coverage for PIP benefits when the insured truck is being used in the business of any lessee or while being used to transport cargo. Because the truck was being used by a lessee (Pergjoni Transport had leased the vehicle to B&W) and, alternatively, because the truck was transporting cargo at the time of the accident (cargo was being hauled from Michigan to Missouri), the coverage for bodily injury was excluded. Indeed, plaintiff does not dispute that this provision, on its own, would exclude coverage.

Plaintiff instead argues that an endorsement to the policy makes the trucking or business-use exclusion ineffective. In *Besic v Citizens Ins Co of the Midwest*, 290 Mich App 19, 26; 800 NW2d 93 (2010), this Court explained:

"[E]ndorsements often are issued to specifically grant certain coverage or remove the effect of particular exclusions. Thus, such an endorsement will supersede the terms of the exclusion in question." 4 Holmes, Appleman on Insurance (2d ed), § 20.1, p 156. "When a conflict arises between the terms of an endorsement and the form provisions of an insurance contract, the terms of the endorsement prevail." *Hawkeye-Security Ins Co v Vector Constr Co*, 185 Mich App 369, 380; 460 NW2d 329 (1990). "[E]ndorsements by their very nature are designed to trump general policy provisions, and where a conflict exists between provisions in the main policy and the endorsement, the endorsement prevails." *Nationwide Mut Ins Co v Schmidt*, 307 F Supp 2d 674, 677 (WD Pa, 2004)."

The endorsement states, in pertinent part, "With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement." The endorsement then continues to list 15 new situations in which PIP benefits would not be covered.

Importantly, none of the exclusions listed in the endorsement conflicted with the trucking-use exclusion in the general policy (or with any of the other Coverage Form exclusions). It also is important that the endorsement never stated that it was proving an exhaustive list of exclusions. Accordingly, because no conflict exited, we agree with the trial court that the initial exclusion remained in effect.

Plaintiff's reliance on *Besic* is misplaced. In *Besic*, this Court held that while a similar bobtail policy generally excluded coverage while the insured truck was being used for business, the endorsement nonetheless extended PIP benefits for business use if PIP benefits were not

available to the lessee under any other policy. *Besic*, 290 Mich App at 25-27. In *Besic*, the policy stated, "No coverage is afforded when the described vehicle(s) is (are): 1. Under motor carrier direction, control, or dispatch." *Id*. at 25. But an incorporated endorsement unambiguously modified the coverage, providing that "coverages do not apply to 'bodily injury' or 'property damage' resulting from the operation, maintenance or use of the covered 'auto' in the business of anyone to whom it is leased or rented if the lessee has Michigan Personal Injury and Property Protection coverages on the 'auto.' " *Id*. Thus, because the endorsement expressly provided for coverage that had been excluded in the Coverage Form, it created a conflict, and the terms of the endorsement therefore controlled. *Id*. at 26-27. In the present case, there is no express conflict between the endorsement and the Coverage Form. Accordingly, because there was no coverage available under the Great American policy, the trial court did not err by granting Great American's motion for summary.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto
/s/ Anica Letica